WILLIAM H. BROWN et al., Executors of AARON PITNEY, deceased,

v.

MARGARET PITNEY.

MARGARET PITNEY.

WILLIAM H. BROWN et al., Executors of AARON PITNEY, deceased.

1. DOCTRINE OF ELECTION — as applied to devisees and legatees—its meaning. The doctrine of election, as between inconsistent rights, although founded on a principle that is just everywhere, is most frequently applied to devisees and legatees in wills; and, as applied to them, it means simply, that he who would accept the bounty of another must do so upon such terms and conditions as the donor may choose to impose. The beneficiary under a will cannot insist that the provisions in his favor shall be executed and those to his prejudice annulled. He must accept the instrument in its entirety or not at all.

2. If a testator, intending to dispose of his property, mixes, in his disposition, property as to which another person has a right to defeat his disposition, giving to that person an interest by his will, that person shall not be permitted to defeat the disposition where it is in his power, and yet take under the will. In such case there must be an election.

3. SAME—as applied to dower. The rule of election applies to every species of right, and the right of dower is no more protected than any other.

4. SAME — the rule under our statute. Under the tenth section of our existing statute of dower, if the will of the husband devise land to the wife, such devise is of itself a bar of dower unless otherwise expressed in the will, but the widow may nevertheless renounce the will and claim her dower.

5. On the other hand, a bequest of personalty does not, of itself, like a devise of realty, bar the dower, since the Revision of 1845.

6. If, however, the testator, in bequeathing personalty to the widow, shows, either by express terms or by necessary implication from other provisions in the will, that the personalty is intended to be in lieu of dower, then the widow must elect between the bequest and her dower.

7. But under our law a still different case may arise. By the fifteenth section of the dower act, the widow of a husband who has died leaving no lineal descendants, may take, in lieu of dower, one-half in fee of the real estate which may be left after the payment of debts. And if a testator, without lineal descendants, bequeaths to his widow a sum of money, and expressly provides in his

will that such bequest shall not be in lieu of dower, but shall be in lieu of any claim which the widow may make to one-half of his real estate in fee, after the payment of debts, the widow, in such a case, could take both her dower proper and the bequest, but she could not exercise the power of substitution under the fifteenth section, and take in lieu of dower, the one-half in fee and also take the bequest. She cannot take under the will, and at the same time overturn it.

8. A testator may make a bequest of personalty to his widow, and provide that she must accept it in lieu both of her dower and of her right to take one-half in fee under the fifteenth section; or he may provide that she may still have her dower proper, but not have one-half in fee, and while in neither case would she be barred of her right either to her dower proper or to the one-half in fee, as she might prefer, yet, in the first case, if she insist on either dower or fee, she must forego the bequest, and, in the latter case, if she insist on the one-half in fee she must forego the bequest. She must, in short, be put to her election.

9. And these results may follow, either from the express terms of the will or from its necessary implications, from any thing in its provisions which shows the clear intent of the testator.

10. But, where it is said the widow will be compelled, in these contingencies, to forego the legacy, it is not to be understood that she must wholly forfeit it, but only surrender so much of it as shall be a compensation to other beneficiaries of the will who are disappointed of the testator's intended bounty through the assertion by the widow of her legal and independent rights.

. 11. Same—*application of these rules to this case.* In this case, after a bequest of one-third of his household furniture to his wife, the testator directed the residue of his personal property and all his real estate to be sold by his executors for the purpose of creating a fund, out of which should be paid the debts, funeral expenses, certain legacies, and an annuity of six hundred dollars to the widow, and the residue was directed to be divided between certain collateral kindred. The real estate was accurately described, and the executors were authorized to execute to the purchasers good and sufficient deeds, which should vest the property in the purchasers as fully as if he had himself executed the same. It was held that the widow could not take the annuity and also one-half the real estate in fee, but must be put to her election.

12. But the court were not prepared to say that the will showed an intention that the widow should not claim strict dower as well as the annuity.

13. Widow s *right to one-half the land in fee—to what character of estate that right attaches.* Under the statute which gives the one-half of the real estate of which her husband died seised to the widow, under certain circumstances, in lieu of dower, the right to the one-half in fee applies to all classes of estates in which dower is demandable, and this, by express provision, includes equitable as well as legal estates of inheritance.

14. The only limitation to this right of substitution is, that the one-half in fee can be substituted for the one-third for life only in the estates of which the

husband died seised. The substitution would not be allowed in regard to lands conveyed by him, in his life-time without joinder by the wife.

15. Estoppel. Where the owner of land, for the purpose of evading the payment of an anticipated creditor, conveys the same to another to be held as a secret trust for the grantor, equity would not enforce the trust, yet, should the grantor die while the title was thus situated, and the grantee and trustee voluntarily convey the land back to the executors of the grantor, who accept the conveyance in their capacity as executors, and for the avowed purpose of placing "the property to the benefit of the estate, where it belonged," the executors will be estopped to deny that the testator died seised of an equitable estate of inheritance in the premises, as against his heirs, devisees or widow.

16. Nor could any of the beneficiaries under the will, deny the seisin of the testator, for the purpose of disputing the rights of others, they themselves claiming by virtue of such seisin.

17. Parol evidence — *explaining a deed.* While parol evidence is inad-missible for the purpose of contradicting a deed or impairing its legal effect, it is always admissible for the purpose of showing the circumstances under which a deed was made and from whom the consideration moved, with the view of establishing a resulting trust.

18. So, where the owner of land executed a conveyance of the same in fee, a consideration being stated in the deed, it is competent, upon a reconveyance of the land to the executors of the grantor, to show, by parol, that there was no consideration for the first conveyance, but that it was made to avoid the payment of an anticipated creditor, and that the land was to be held by the grantee as a secret trust for the grantor; and this for the purpose of showing that the latter died seised of an equitable estate of inheritance in the premises.

Appeal from the Circuit Court of Cook county; the Hon. E. S. Williams, Judge, presiding.

A statement of the case appears in the opinion of the Court.

Mr. H. C. Pitney, and Messrs. Mather & Taft, for the executors.

Messrs. Bates & Towslee, for Margaret Pitney.

Mr. Justice Lawrence delivered the opinion of the Court:

On the 7th of January, 1865, Aaron Pitney died, leaving a widow, Margaret Pitney, but no lineal descendants. He left a will which had been duly executed on the 24th of December,

1864, and which after his death was duly probated. By its provisions, after a bequest of one-third of his household furniture to his wife, he directed the residue of his personal property and all his real estate, consisting of two houses on Michigan avenue, in the city of Chicago, known as No. 83 and No. 115, and forty acres of land, to be sold by his executors for the purpose of creating a fund, out of which should be paid the debts, funeral expenses, certain legacies, and an annuity of $600 to the widow, and the residue was directed to be divided equally between the children of his late brother, Mahlon Pitney, and his brother-in-law, William H. Brown, giving, as a reason therefor, " a large portion of my property having been received through his father and the father of my late wife, Betsy H. Pitney." The different parcels of real estate were described by their numbers, and devised to his executors, William H. Brown and Henry C. Pitney, for the purpose of executing the trusts created by the will, and they were authorized to execute, to the purchasers of said property, good and sufficient deeds. The executors named in the will qualified as such, and on the 4th of March, 1865, the widow, Margaret Pitney, filed her petition in the Circuit Court of Cook county, against them, claiming the benefit of the provisions of the will in her favor, and also dower in the realty, and praying the court to decree to her one-half of the real estate in fee in lieu of dower. The executors answered, denying the right of the widow to claim both the annuity and one-half of the real estate, admitting that she might take either, and asking that she be put to her election. The executors further insisted, in their answer, that she could not, in any event, take one-half the fee in lot 83, on the ground that Pitney did not die seised of either a legal or equitable estate in that lot. The Circuit Court rendered a decree allowing her one-half the fee in the property described as No. 115, and in the forty acres of land, and also giving her the annuity, but disallowing any claim in lot No. 83. Both parties appealed. The widow assigns for error the decree as to lot 83, and the executors that portion of it which gave to her both the annuity of $600 and also one-half the fee in lot 115

and the forty acres of land. We will consider first that portion of the decree to which the executors except.

The doctrine of election, as between inconsistent rights, has been long established. Although founded on a principle that is just everywhere, its most frequent practical application has been to devisees and legatees in wills. As applied to them it means simply, that he who would accept the bounty of another must do so upon such terms and conditions as the donor may choose to impose. The beneficiary under a will cannot insist that the provisions in his favor shall be executed and those to his prejudice annulled. He must accept the instrument in its entirety or not at all. This is a doctrine founded upon so clear a principle of natural equity that it must necessarily be recognized in every system of enlightened jurisprudence. *Noyes* v. *Mordaunt*, 2 Vernon, 581, and *Streatfield* v. *Streatfield*, Cases Temp. TALBOT, 176, are among the earliest reported cases in our law in which this principle has been applied, but they have since been very numerous, and hardly any rule can be considered better settled. In *Whistler* v. *Webster*, 2 Vesey, Jr. 370, Lord ALVANLEY, master of the rolls, says: "No man shall claim any benefit under a will without conforming as far as he is able, and giving effect to every thing contained in it, whereby any disposition is made showing an intention that such a thing shall take place, without reference to the circumstance whether the testator had any knowledge of the extent of his power or not." The principle is nowhere better expressed than by Lord ERSKINE, in the celebrated case of *Thelusson* v. *Woodford*, 13 Ves. 221, in the following language: "If a testator, intending to dispose of his property * * * mixes, in his disposition, property that belongs to another person, or property as to which another person has a right to defeat his disposition, giving to that person an interest by his will, that person shall not be permitted to defeat the disposition where it is in his power, and yet take under the will. The reason is, the implied condition that he shall not take both, and the consequence follows that there must be an election; for though the mistake of the testator cannot affect the property of another person, yet that

person shall not take the testator's property unless in the manner intended by the testator."

In *Birmingham* v. *Kirwan*, 2 Schoales & Lefroy, 444, Lord REDESDALE remarks: "The rule of election seems to me to apply to every species of right, and I cannot find that the right of dower is more protected than any other;" and in reference to the case before him, he says, "the assertion by the widow of a right of dower in the house and demesne, would be inconsistent with the disposition of the house and demesne contained in the will, and therefore the widow cannot have both."

Chief Justice MARSHALL says, in *Hubert* v. *Wren*, 7 Cranch, 370: "It is a maxim of a court of equity not to permit the same person to hold under and against a will. If it be manifest, from the face of the will, that the testator did not intend the provision it contains for his widow to be in addition to her dower, but to be in lieu of it, if his intention, discovered in other parts of his will, must be defeated by the allotment of dower to the widow, she must renounce either her dower or the benefits she claims under the will."

Numerous cases enforcing the same principle will be found collected in 1 Jarman on Wills, 397, *et seq.*, 1 Bright's Husband and Wife, section "Election," and 1 Leading Cases in Equity, 290. The doctrine was applied in its full extent, in this court, in *Wilbanks* v. *Wilbanks*, 18 Ill. 17, in which it was held that if a testator devise to one person land belonging to another, and in the same will bequeaths to the owner of the land a moneyed legacy, a case for election is raised. The owner must relinquish his own estate to the devisee thereof under the will, or forego the legacy, at least to an extent equivalent to the value of the estate. In such cases equity will sequester so much of the legacy as may be necessary to compensate the devisee if the owner of the estate devised elects to retain it.

Let us apply these well settled principles to claims of dower in this State, where the husband has died leaving a will. In such cases, under the tenth section of our existing statute of dower, if the will devise land to the wife, such devise is of itself a bar of dower, unless otherwise expressed in the will,

but the widow may nevertheless renounce the will and claim her dower. On the other hand, a bequest of personalty does not, of itself, like a devise of realty, bar the dower, since the Revision of 1845, as settled in the case of *Jennings* v. *Smith*, 29 Ill. 120. In the one case, the will containing nothing to show the intent of the testator, the widow cannot take both the land devised and her dower. In the other case, the will containing nothing to show the intent, the widow may take both the personalty bequeathed and her dower. If, however, the testator, in bequeathing personalty to the widow, shows, either by express terms, or by necessary implication from other provisions in the will, that the personalty is intended to be in lieu of dower, then, under the well settled principles already stated, the widow must elect between the bequest and her dower. She cannot accept the testator's bounty except upon such terms as he has thought proper to impose. They are binding on her conscience, and this is intimated *obiter* by the court in this same case of *Jennings* v. *Smith.*

But, under our law, a still different case may arise. By the fifteenth section of the dower act, the widow of a husband, who has died leaving no lineal descendants, may take, in lieu of dower, one-half in fee of the real estate which may be left after the payment of debts. This is an estate widely different, both in quality and in quantity, from that of dower. Suppose, then, a testator, without lineal descendants, bequeaths to his widow a sum of money; and expressly provides in his will that such bequest shall not be in lieu of dower, but shall be in lieu of any claim which the widow may make to one-half of his real estate in fee after the payment of debts, the widow, in such a case, would be permitted to take both her dower proper and the bequest; but, if she should seek to take, in lieu of dower, the one-half in fee, a court of equity would say to her that the testator had given her the money on condition that she should not exercise this power of substitution under the fifteenth section; and that, if she accepted his bounty, she must do so upon his terms. She cannot take under his will, and at the same time overturn it. He cannot, by his will, deprive her of her dower,

or of her legal right under the fifteenth section to take one-half of the realty in fee instead of dower, but he can say to her, and has the undoubted right to say, "If you do exercise your legal right of substituting one-half in fee in place of one-third for life, under this section, then you must forego the bounty that I intended for you in the way of personalty. It is on this condition only that I give it to you." If, as decided by this court, in *Wilbanks* v. *Wilbanks*, 18 Ill. 17, a testator can compel a devisee to give up his own land to another, as a condition of his bounty, *a fortiori*, can a testator compel a widow to relinquish her right to land not her own, but the title of which is to come through the testator, as a condition to her enjoyment of a bequest which the law does not require him to make? There can be no question but that a testator may make a bequest of personalty to his widow, and provide that she must accept it, in lieu both of her dower and of her right to take one-half in fee under the fifteenth section; or he may provide that she may still have her dower proper, but not have one-half in fee; and while, in neither case, would she be barred of her right, either to her dower proper or to the one-half in fee, as she might prefer, yet, in the first case, if she insist on either dower or fee, she must forego the bequest; and, in the latter case, if she insist on the one-half in fee, she must forego the bequest. She must, in short, be put to her election. And these results may follow, either from the express terms of the will or from its necessary implications, from any thing in its provisions which shows the clear intent of the testator. We should add, however, that, when we speak of the widow being compelled, in these contingencies, to forego the legacy, we do not mean that she must wholly forfeit it, but only surrender so much of it as shall be a compensation to other beneficiaries of the will who are disappointed of the testator's intended bounty through the assertion by the widow of her legal and independent rights. This question of compensation, however, does not arise in the present case.

In the light of these principles the case at bar is easy of determination. The claim of the widow to one-half the real

estate in fee is plainly inconsistent, both with the general frame and plan of the will, and with its specific provisions. The testator directs that his executors shall sell, within one year from his decease, "all my real estate," proceeding to describe it. It gives one-third of the household furniture to his wife, and directs his executors to sell the remaining two-thirds. Out of the fund to be thus raised from all the realty and two-thirds of the furniture he directs the payment of his funeral expenses, debts, legacies and the sum of $600 per annum to his wife, and that the balance "shall be equally divided between the children of my late brother Mahlon Pitney and my brother-in-law, William H. Brown, of the city of Chicago, a large portion of my property having been received through his father, and the father of my late wife, Betsey H. Pitney." Can it be for a moment supposed, that when he directed a fund to be raised by the sale of "all his real estate," and out of that fund made a provision for his widow in the form of an annuity, and then gave as a reason for his disposition of the residue, that "a large portion" of his property had been received from a person to whose blood he returned it, his then wife, as appears from the record, having been married to him but two and a half years, and therefore not having aided him in the accumulation of his property,—can it be believed, we ask, that he intended his widow should have both the annuity of $600, and one-half in fee, of that, property, all of which he had just directed should be sold to raise the fund. It is undeniable that this would disappoint the plan of the will, and be inconsistent with its entire spirit. But there is a specific provision which makes it still clearer. He provides that the executors shall make good and sufficient deeds to the purchasers, "which shall vest said properties in the purchasers thereof as fully as if I had myself executed the same." Now, a deed executed by him would have vested in the grantee the fee of the entire property subject to the widow's right of dower, that is, subject to her estate in one-third for life, and if he intended, as his will says, that the deeds of his executors should have that effect, how can it be said that he at the same time

contemplated that his widow would assert a right which would deprive them of such effect, and make them convey only one-half of the property instead of all, subject merely to a life estate in one-third?

We are not prepared to say this will shows an intention that the widow should not claim strict dower as well as the annuity, nor indeed do the counsel for the executors so insist, but we have no hesitation in saying that the testator clearly did not intend she should have one-half his realty in fee, and the annuity besides.

The counsel for the petitioner do not, as we understand them, seriously contest this point, but they nevertheless insist that the whole question is settled by the case of *Jennings* v. *Smith*, 29 Ill. We entertain no doubt whatever as to the correctness of that decision, and all the reasoning of the opinion, but we cannot see its application to the present case. The single question there was, whether a bequest to the widow of a share of the proceeds of sale of the personalty and realty operated in itself to bar her dower, and the court decided that, since the revision of 1845, it did not—that it was not a devise of land, and that the widow could take both dower and the bequest. We still say so, unless the bequest was unmistakably intended by the testator to be in lieu of dower as clearly apparent on the face of the will, and in such a case, the court intimated in that opinion, it would be a bar if accepted, which is only another mode of saying that in such cases the widow would be put to her election. But there was nothing in that case to raise the question of election. There was nothing whatever in the will to indicate that the bequest was intended to be in lieu of dower. The testator did not devise his lands to any one, nor did he direct that they should be sold, except at the pleasure of the widow, nor what effect the deed was to have, nor did he say any thing to indicate that when sold they were to be sold, discharged of dower. He merely directed that when sold the proceeds should be divided equally between his heirs, among whom he specifies his then wife, a former wife and their respective children. We do not perceive how this indicated

he intended the sale to be free from dower, or the bequests to be in lieu of dower. Neither did the counsel in that case so regard it, as there is nothing in the opinion to indicate that such a question was raised. The case decides that a mere bequest of personalty does not cut off dower, but it certainly does not decide that a bequest of personalty accompanied by provisions in the will clearly showing it was intended to be in lieu of dower, would not compel the widow to elect whether she will insist on her statutory rights, or relinquish them in order to accept the bounty of the testator.

Before passing from the case of *Jennings v. Smith*, it may be remarked, that one of the statements in the head note directly reverses the statement in the opinion—the result, probably, of a typographical error. The language of the head note is, "the mere bequest of personal estate, *with* the condition that it should bar dower, would not produce that result." The language of the court is, "the mere bequest of personal estate, *without* such a provision, would not produce that result."

We will now consider the other branch of the case relating to lot eighty-three. The facts are as follows:

On the 28th of December, 1863, the testator and his wife executed to Marcus D. Gilman a deed for lot eighty-three, on a nominal consideration of $10,000. Nothing, however, was paid in fact. The deed was executed because of the apprehensions created in the mind of Pitney by a suit brought against him for an alleged breach of promise of marriage. Gilman was his friend, and was to hold the property on a secret trust for his benefit. The suit was abandoned, and Pitney remained at all times in possession of the house and collected the rents, but the title, probably from forgetfulness, was allowed to remain in Gilman. Shortly after the death of Pitney, Mr. Gilman called on the executor, Mr. Brown, and had an interview with him, the substance of which he describes in his deposition as follows:

"About the 10th or 12th of January, I think, as I was about leaving for New York, to be absent some time, and knowing

that the property did not belong to me, but to the estate of Dr. Pitney, I called upon Mr. William H. Brown, at his residence, stated to him the situation of this property ; he manifested great surprise at the situation, he said that the property belonged to the estate, and supposed had been re-conveyed some time before; I told him I desired to place the property where it belonged, as I had no interest in it; I said to him that Mrs. Pitney desired me to convey the property to her, which I declined; he said I had done very right, for it would only confuse matters; the conveyance should be made in such manner as to place the property to the benefit of the estate, where it belonged; he said he would attend to it at once, as one of the executors of the estate; he said that he drew the will, and was willing to waive the will and give Mrs. Pitney a third interest in all the real estate, that is, the Phillips place and the old homestead, together with the personal property; he said he supposed she could legally obtain one-third, and he told the Doctor so when he made the will; I left for New York the next day, and did not return until about the first of February; I think somewhere about the 20th of February, Mr. Brown and Mr. Henry C. Pitney called at my office; Mr. Brown stated that he desired to close up that Phillips property; he said he had drawn up a deed conveying the property to the executors of the estate, saying he would have Judge Mather call at my house at noon to take the acknowledgment; I glanced over the deed, saw it was running to the executors; I was very busy and said, 'Mr. Brown, this is all right, I suppose, as we talked;' he said, 'yes.'

"*Int.* 13.   Did you read that deed through before you executed it?

"*Ans.*   Yes; I did not read it carefully; I saw it was a quitclaim deed, and that the consideration was $10,000, the same as in the deed of Dr. Pitney to me, and that it was running to the executors of the estate of Aaron Pitney; those were the only points I noticed about it.

"*Int.* 14.   What did you receive for this deed from Brown and Pitney, or either of them?

"*Ans.*   Nothing whatever.

"*Int.* 15. What did you understand when you asked Mr. Brown if it was 'all right as we talked,' and he answered 'yes,' by that answer?

"*Ans.* I understood by the answer that the deed complied with the desire of both of us, as expressed at the interview at his residence, that the property should be placed to the estate, where it belonged; that the deed placed it there.

"*Int.* 16. Had Mr. Brown or Pitney advised you that the deed marked 'Exhibit B' did not convey the property to the estate of Dr. Pitney, but to themselves as individuals, would you have executed it?

"*Ans.* I should not.

"*Int.* 17. What convictions upon your mind did Mr. Wm. H. Brown's statement to you with reference to this property and its reconveyance produce?

"*Ans.* His statements produced the conviction in my mind that he desired this property so placed, with the other estate of Dr. Pitney, that the executors could go on and close up the estate.

"*Int.* 18. If, by mistake, fraud, or accident, the 'Exhibit B' does not convey the property described therein to the estate of Dr. Aaron Pitney, is it the deed that you intended?

"*Ans.* It is not.

"*Int.* 19. Can you state any further, or more full, conversation or statement of Mr. Brown, indicating his desire and intention that he would make an instrument of reconveyance of the Phillips house to the estate of Dr. Pitney?

"*Ans.* In the conversation at his residence, he stated that Mrs. Pitney might have either the Phillips house or the Homestead, if she could pay the difference, as the third would not be as much in value as either place."

It appears from this testimony, as plainly as it can appear from human evidence, that when Gilman conveyed this property to the executors, it was with the expectation and under the belief that he was placing the title in the same position in which it would have been placed by a deed to Pitney in his

life-time. And we do not wish to be understood as imputing either fraud or misrepresentation to Mr. Brown, for it is altogether probable that he entertained the same idea himself. However this may be, it is certain that the single object of Mr. Gilman in executing the deed was to fulfill the trust reposed in him by Pitney, and place the property in the estate, to be dealt with as the will of the testator and the law of the land might direct. He, doubtless, was aware of the contest likely to arise between the widow and certain of the beneficiaries under the will, and his object was to avoid all responsibility, and to aid neither one party nor the other, but to convey to persons who represented the testator, or his estate, with precisely the same results as if he had conveyed to the testator himself, as already stated, before his death.

Against the claim of the petitioner to one-half in fee of this property, it is urged by the executors that Pitney did not die seised of either a legal or equitable estate of inheritance therein, as required by the fifteenth section of the dower act. It is also suggested by counsel for the executors that that section does not use the term " equitable " estates. As to this, however, it is only necessary to say that as this one-half in fee is given in lieu of dower, it must necessarily be applied to all classes of estates in which dower is demandable, and this, by express provision, includes equitable as well as legal estates of inheritance. The only limitation is, that the one-half in fee can be substituted for the one-third for life only in the estates of which the husband died seised. To have allowed the substitution in regard to lands conveyed by him in his life-time, without joinder by the wife, would have been palpably unjust.

Did, then, Pitney die seised of an equitable estate of inheritance in lot 83 ? All that need be said in reply to this question, so strenuously urged upon us by the executors, is, that they have voluntarily placed themselves in a position where no court will permit them to controvert the seisin as against Pitney's heirs or devisees or widow. It is a question they cannot raise. It is quite true, as urged by them, that the conveyance to Gilman was binding upon Pitney and his heirs. The secret

trust upon which Gilman held the property was a trust which equity would have refused to enforce. It was created for the purpose of placing the property beyond the reach of an antici- pated creditor, and at the same time enjoying its benefits. But though tainted with this vice, it was nevertheless a trust which Gilman as an honest man desired to fulfill, and, in order to fulfill it, he executed the deed to the executors. No money was paid by them; the costs of the execution of the deed were paid from the funds of the estate, and the only consideration therefor was the obligation, imperfect in its character it is true, and not enforceable, but nevertheless a moral obligation, to carry out in good faith the trust reposed in him by his deceased friend. The real consideration of the deed then, and the only ground upon which the executors became invested with the title, was that Pitney was considered both by the trustee and the execu- tors as having died seised of an equitable estate of inheritance. Brown claimed, says Gilman, in his testimony already quoted, that " the conveyance should be made in such manner as to place the property to the benefit of the estate, where it belonged," and afterward, when he called with a deed, said " he had drawn up a deed conveying the property to the execu- tors for the estate."

They thus obtained the title by claiming to represent the estate, and by asserting that the property in equity belonged to Pitney, and should be conveyed to them as his executors. And when the deed was made upon the sole consideration that Pitney died seised of the equity, when the executors obtained the deed by asserting such equity, and upon the ground that they were his executors, how can they now be permitted to say that he had neither a legal nor equitable estate under which the widow or heirs can claim? For if the argument urged is good as against the widow, we see not why it would not be equally good as against the heirs, if there were no will, or if the will were set aside. It is claimed, in the argument, that the executors are bound to account only to the beneficiaries under the will. Yet if the will were set aside for any reason by a decree in chancery, they surely would not contend that they

could not be made to account for this property to the heirs. The truth is, they hold the property in trust, not merely for the objects of Pitney's bounty in his will, but for all persons who would have had a claim to the property if Gilman had conveyed to Pitney before his death. That these executors are estopped from denying his seisin as against the widow, heirs or devisees, is a proposition admitting of no doubt, and hardly susceptible of controversy.

And while the executors are thus estopped from setting up title in their own right, it is equally clear that they cannot, in behalf of the beneficiaries under the will, deny the seisin of the testator. The claim of the beneficiaries rests solely upon the theory that this property belonged to the testator. The testator disposed of it, and the beneficiaries claim its proceeds, upon the hypothesis that he died seised of it; and, while they insist upon his seisin for the purpose of claiming the benefits of the provisions in his will, they cannot in the same breath deny his seisin, for the purpose of disputing the rights of his widow under the statute. What they could not do for themselves, the executors cannot be permitted to do for them.

We observe that Gilman's testimony was objected to when taken. The objection has not been pressed in the argument, and has no foundation. While parol evidence is inadmissible for the purpose of contradicting a deed or impairing its legal effect, it is always admissible for the purpose of showing the circumstances under which a deed was made, and from whom the consideration moved, with the view of establishing a resulting trust.

We hold that the petitioner is entitled to claim one-half in fee of lot 83, and also of the other real estate, but she must elect whether she will take this and forego the annuity, or whether she will take the annuity and her dower proper, that is, one-third for life, and abandon all claim to the one-half in fee. The furniture was not the subject of any part of the decree, or of the assignment of error, or of the argument, and we therefore give no specific directions in regard to it. The decree is

reversed and the cause remanded for further proceedings in conformity with this opinion.

*Decree reversed.*

NOTE BY THE REPORTER.—The clause in this will bequeathing the residuary fund to the children of Mahlon Pitney and to William H. Brown, is construed in the case of *Pitney et al.* v. *Brown,* decided at the April Term, 1867, where it is held that those residuary legatees take *per ·capita* and not *per stirpes.*