### BANNISTER v. BANNISTER.

1. WILL—DOWER—ELECTION.—The legal right of the wife to dower in the lands of her husband cannot be defeated by his last will and testament; but if, by his will, he makes a provision for his widow, and declares it to be in lieu of dower, or his will, taken as a whole, shows an intention that the provision for the widow was not to be in addition to her dower, then she must elect between the two, the will and the dower, and cannot take both.

2. IBID.—IBID.—IBID.—Where a childless testator bequeaths his furniture to his widow absolutely, and directs his executors to convert all of the remainder of his real and personal property into money, and then "to divide the entire estate into two equal parts," and bequeaths one moiety to his brother absolutely, and gives the other moiety to be controlled and managed by his executors, who are to pay over the income thereof to his widow for life, and after her death to pay over this moiety to his nephews, the provision for the widow was intended to be a substitute for her dower, and she, having elected to take under the will, could not afterwards claim dower. MR. CHIEF JUSTICE MCIVER *dissenting.*

Before HUDSON, J., Greenville, April, 1892.

This was a proceeding in the Court of Probate by Sarah Bannister against the executors and legatees of John Bannister, deceased, for dower, commenced June 30, 1891. The opinion states the case.

*Messrs. T. Q. & A. H. Donaldson,* for appellant.

*Messrs. Cothran, Wells, Ansel & Cothran,* contra.

November 17, 1892. The opinion of the court was delivered by

MR. JUSTICE MCGOWAN. The facts of this case, as stated, are as follows: John Bannister died in 1891, seized and possessed of real and personal estate, supposed to be worth about $12,000, and consisting in part of a tract of land, containing five hundred acres, of the value of four or five thousand dollars, out of which his widow, Sarah Bannister, claims dower. He left a will, by which he appointed William M. Bannister

64—37

and William D. Mayfield his executors, by the first clause of which he directed his executors to pay his debts, and in the second, as soon after his death as they deemed most advisable, to sell to the best advantage all of his real estate, and, also, all his personal property, except his household and kitchen furniture, and to collect, as far as they may think best or necessary for the purposes of his will, having due regard to all the provisions made therein, all of his accounts, notes, bonds, and mortgages. In the third clause, after having executed the two foregoing to such an extent as, in their judgment, will enable them definitely to decide the value of his entire estate, he directs his executors to "divide the entire estate into two equal parts." In the fourth clause, he directs his executors to take the control and management of one of the equal parts provided for in the third clause, and to control and manage the same as, in their judgment, will cause it to yield the best annual income, which he directs them annually to pay over to his wife, Sarah Bannister, the appellant herein, for her use, benefit, and behoof, for and during the period of her natural life. In the fifth clause, in addition to the above provision, he gives her absolutely all his household and kitchen furniture. In the sixth clause, he gives and bequeaths absolutely the other equal part, provided in the third clause, to his brother, David Bannister, if he be living at the time of the testator's death, but if he predeceases the testator, then absolutely unto such of the sons of David as shall be alive at the death of the testator. And in the seventh clause, upon the death of his wife Sarah, the part bequeathed for life is to go absolutely to such of the sons of David Bannister as shall be living at her death.

The testator left a widow and brothers and sisters, but no children. The widow claims dower in the 500 acre tract of land, *in addition* to the provision made for her by the will. This was allowed her by the decree of the probate judge, which was reversed upon appeal by his honor, Judge Hudson. From his judgment the widow Sarah appeals to this court upon the following grounds: (1) Because his honor erred in deciding that the exceptions of the defendants to the decree of the Probate Court were well taken; whereas, he should have overruled

the same and confirmed the said decree, allowing the petition-er's claim of dower. (2) Because his honor erred in holding that the petitioner's claim of dower is inconsistent with the provisions of the will in her behalf. (3) Because his honor erred in holding that the petitioner is put to her election be-tween taking under the provisions of the will and claiming dower in the real estate of the testator.

The widow has a legal right to dower in the lands of which her husband was seized during the coverture. This right the husband can not defeat, by willing his whole property to others; but he may give his widow what he pleases of his own property, *as a substitute for her dower.* If he expressly declares that such provision is intended as a substi-tute, "in lieu and bar of dower," then the widow may take the provision made for her by will, but if so, she can not take dower also; she can not take both, but must elect which she will take. Cases often arise, however, where the husband omits to say in the will that the provision made in the will was intended to be in lieu and bar of dower; and then the question arises, whether the will, taken as a whole, shows that the test-ator did not intend to give the provision in addition to dower. As this question depends largely upon construction and some-thing like mere opinion, allowing no fixed rule as applicable to all cases, it is not strange that there has been a good deal of discussion, and possibly some difference of opinion on the sub-ject, growing out of the ever changing circumstances of the different cases. As stated in the case of *Gordon* v. *Stevens,* 2 Hill Ch., 48, the principle is as follows: "As the right to dower is a clear legal right, *an intent* to exclude that right must be manifested by express words, or by clear and manifest impli-cation." Or, as it was expressed by Chief Justice Marshall, in *Herbert* v. *Wren,* 7 Cranch, 370: "It is a maxim of a court of equity not to permit the same person to hold under and against a will. If, therefore, it be manifest from the face of the will that the testator did not intend the provisions it contains for his widow to be in addition to her dower, but to be in lieu of it, if his intention, discovered in other parts of his will, must be defeated by the allotment of dower to the widow, she must

renounce either her dower or the benefits she claims under the will," &c.

Now, taking this standard furnished by the great Chief Justice, does the will of John Bannister disclose an intention, which would be defeated by the allotment of dower to his widow? I can not doubt that it does disclose such intention, for the following among other reasons:

*First.* Upon the subject of intention some consideration is due to the amount of the provision for the widow. As Chancellor David Johnson, in the case of *Brown* v. *Caldwell*, Speer Eq., 323, said: "It will be implied in all cases where the dispositions of the will are so inconsistent with the wife's right of dower, that they can't both take effect; or, if the provision for the wife be as ample, regard being had to the value of the estate, as to excite the belief that the testator could not have intended that she take both." The testator had no children, but a wife, and brothers and sisters. In such case, the widow would have been entitled, under the statute of distributions, to "one-half of the estate." The will gave her one of two equal parts for life, and in addition the household and kitchen furniture absolutely.

*Second.* The manner in which the provision for the wife was made. It seems that the leading thought in the mind of the testator was, that the provision for his wife should be in money or stocks, and held for her by others. The intention was express that his land should be sold and turned into money, and in that form the executors were to divide "the entire estate" into two equal parts, and to control one of the parts, and to pay the income annually to his wife, "during the period of her natural life." Is it not manifest that this intention would be defeated by laying off dower by metes and bounds in the land? When the testator directed all his lands to be sold, can it be supposed that he meant the *remnant* of his lands after the assignment of dower, or that he meant that the land should be sold subject to his wife's claim of dower? Besides, the testator intended the executors to manage the provision for his wife, and pay her the income, which would surely be defeated by the widow occupying one-third of the land itself as dower.

*Third.* The provision for the wife is greater than the dower

in the land, and of course she has accepted it. That provision included one-half of the proceeds of the land directed to be sold; can she, after taking the proceeds of the land, also claim one-third of the land itself in the shape of dower? Did the testator intend that, in addition to such provision in money, his widow should have dower in the land, which to a large extent produced the money? This would be not only unreasonable, but *unlawful.* Suppose the testator had devised one-half the land to the widow for life, she could not have claimed dower in that land. See *Cunningham* v. *Shannon,* 4 Rich. Eq., 136, and *Shaffer* v. *Shaffer,* 16 S. C., 625. When the inquiry is as to the intention of the testator, what is the difference between giving half the land itself and giving half the proceeds of the land? See *Brown* v. *Pitney,* 39 Ill., 468, where it was held that a direction to sell, with annuity to the widow payable out of the proceeds of such sale, was construed to be in lieu of dower. "A specific legacy and the income of one-third of the proceeds of the real estate, when sold, with directions to sell the real estate and divide the proceeds, puts the widow to her election." *Duncan* v. *Duncan,* 2 Yates (Pa.), 302. "The testator devised his whole estate to his executors, to convert the personal estate into money, and to divide the proceeds of his real and personal estate into two equal parts, to invest one of such parts, and pay the income thereof to his wife, Sallie Colgate, during the period of her natural life, and on her death to divide the principal equally among his children. The remaining half to be divided among his children" (*Colgate* v. *Colgate,* 8 C. E. Gr., 23 N. J. Eq., 374), *held,* that the devise was intended in lieu and bar of dower.

*Fourth.* The will clearly shows an intention that the executors should divide the entire estate "into two equal parts;" one of which should be held for the widow during her life, and the other was given to the brother of the testator, David Bannister, &c. It was obviously the scheme of the will that the division of the estate "*should be equal.*" Would not the allotment of dower in the land, which was to be sold, necessarily defeat that intention as to equality, giving the widow *more* and the other parties *less* than was intended? "The claim of dower during

the lifetime of the husband is contingent and inchoate; it can not be enforced until after his death, and when he devises the whole of his estate, out of which it is to be taken, to his wife and children, to be equally divided among them, her asserting her claim of dower not only disturbs her cotenants in the enjoyment of their estate, but defeats the main object of the testator, an equal partition of the property." *Bailey* v. *Bóyce*, 4 Strob. Eq., 84. See *Hair* v. *Goldsmith*, 22 S. C., 566, and *Callaham* v. *Robinson*, 30 *Id.*, 249.

Considering the whole of this will together, I can not doubt that the testator, John Bannister, intended the provisions of his will for his wife, to be a substitute and satisfaction of all her claims of every kind on his estate, including that of dower; and that to allow her to retain those provisions, and dower in addition, would not only defeat the clearly expressed intention of the testator, but work an injustice to the other parties concerned. I do not overlook the fact that, commencing under the old law, by which the legal existence of the wife was merged in that of the husband, *dower* has always been properly spoken of as "*a favored claim.*" It is true, that latterly the rights of a married woman have been largely increased in respect of her separate estate, homestead, &c. But as the right of dower also still remains to her, I think, in reference to it, that the widow should always have the fullest measure of justice; but that her claim for dower should be considered as all other claims are considered, and determined according to the facts and the law of the case. We agree with the Circuit Judge, that it being admitted that the widow claims under the will, she is not entitled to dower.

The judgment of this court is, that the judgment of the Circuit Court be affirmed.

MR. JUSTICE POPE concurred.

MR. CHIEF JUSTICE McIVER, *dissenting.* As I cannot concur in the conclusion reached by Mr. Justice McGowan, I propose to state, very briefly, the grounds of my dissent. Assuming, as he says, that in each case the question is one of intent, and that each case, as it arises, is to be determined by its own

circumstances, I am unable to discover anything in this will which manifests an intent to make the provision for the widow a substitute for her legal right of dower. If such had been the intent, it would have been very easy to say so. The addition of four words—"in lieu of dower"—would have been quite sufficient for the purpose. But there are no such words, and none of like import, in this will; and, in the absence of any express declaration of such an intent, the only question is, whether it is necessarily implied in what the testator has said, for that, as I understand it, is the well settled rule. Such an intent cannot be implied from the fact, that the devisees take as tenants in common, as in *Bailey* v. *Boyce,* 4 Strob. Eq., 84, and *Hair* v. *Goldsmith,* 22 S. C., 566, for the beneficiaries here do not so take. Nor can it be implied from the directions to the executors to sell, as is shown by the cases of *French* v. *Davies,* 2 Ves., 572; *Adsit* v. *Adsit,* 2 Johns. Ch., 448; *Gordon* v. *Stevens,* 2 Hill Ch., 46. It most certainly cannot be implied from the fact, that the allowance of dower would reduce the value of the provision made for the other beneficiaries, for that happens in every case. *Whilden* v. *Whilden,* Riley Ch., 208; *Braxton* v. *Freeman,* 6 Rich., 35; *Sumerel* v. *Sumerel,* 34 S. C., 89. Nor can it be implied from the fact, that to allow the dower would disturb the equality provided for in the will, as in *Callaham* v. *Robinson,* 30 S. C., 249, for the obvious reason, that equality was not contemplated or provided for in this will. For, while it is true that the testator does direct that the proceeds of sales and collections, required by the second clause of the will, shall be divided into two equal parts, yet one of those portions is given to David Bannister, or his sons, *absolutely,* while the other portion is not given to the widow, but the same is to be held by the executors, managed and controlled by them, with a direction to pay over the annual income thereof to the widow *during her life,* and upon her death, that half is given to the sons of David Bannister *absolutely.* In addition to this restricted provision for the widow, testator gives her all of his household and kitchen furniture. So that the practical result is that the widow is left without a particle of property which she can call her own, and over which she can exercise

any dominion or control, except the paltry bequest, out of an estate estimated to be worth twelve thousand dollars, of the household and kitchen furniture. It seems to me clear, therefore, that the idea of equality in the provisions made for his beneficiaries was not present to the mind of the testator, in making his will.

But in addition to this, as I understand it, one of the main objects in securing to the widow the right of dower, is to provide her with a home; yet here, under the construction given to this will, the widow is not only deprived of her home, but is left without a spot of ground which she can claim as her abiding place even for life, and the property which is only given to her absolutely is the household and kitchen furniture, without any house or kitchen in which it can be used. I cannot think that the testator intended any such result; but, on the contrary, knowing, as he must be presumed to know, that he had no power to dispose of his wife's dower, his intention was that she should retain that right, in addition to the provision made for her in his will, and that when he directed his executors to sell all of *his* real estate, he meant what he said, and did not mean that they should sell what he had no legal right to dispose of, the wife's estate of dower. As is said by Dargan, Ch., in his Circuit decree, in *Cunningham* v. *Shannon*, 4 Rich. Eq., at page 140, which upon this point was affirmed by the Court of Appeals: "Dower is a right which, inchoate during the coverture, becomes absolutely vested in the wife as an estate, on the death of her husband, and is as much beyond his control or power of disposition as her own inheritance. It not being *his* to give, every devise which he makes of the land upon which the right of dower attaches, is presumed to be given subject to the legal estate, unless the contrary appears on the face of the will, in express words or by the strongest kind of implication."

Judgment affirmed.