**The Delta & Pine Land Co. v. Henry F. Benton et al. On Appeal of Clarence A. Tuttle, Executor, Appellant, v. Charles W. Ward and Harriott S. Ward, Appellees.**

### Gen. No. 16,407.

1. TRUSTS—*when precise words creating not significant.* The precise words used to express manifest intention to create a trust are of minor significance when the donor's son-in-law is the trustee and the beneficiary is his granddaughter.

2. TRUSTS—*when no implication that do not take effect in praesenti.* Even if a donor of stock in trust reserved the right to the dividends during his lifetime, that fact raises no implication that

the gift was not to take effect *in praesenti*, but emphasizes the intention that the gift should be absolute.

3. TRUSTS—*when trust in praesenti created.* A trust *in praesenti* is created where the language employed does not suggest that a gift of stock was other than absolute and to become effective immediately, the certificates were delivered and transferred on the books and the subject-matter and the immaturity of the beneficiary suggest that the gift should properly be in trust.

4. TRUSTS—*when gift is inter vivos.* A gift in trust is *inter vivos* though made in contemplation of death if the donor manifests an intention that the gift shall be absolute and effective *in praesenti*.

5. TRUSTS—*when gift not causa mortis.* A gift of stock in trust is not *causa mortis* where the language of the donor shows an intention that the gift shall be absolute and effective *in praesenti* and where the certificates are delivered and transferred on the books though such gift was made "in contemplation of death."

6. TRUSTS—*when gift not void as against widow.* A gift of stock in trust to the testator's granddaughter *inter vivos* though in contemplation of death is not void as against the widow, where the gift was not colorable but was absolute and in consideration of love and affection and where property was retained out of which a suitable provision was made for the widow.

Appeal from the Superior Court of Cook County; the Hon. GEORGE A. DUPUY, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1910. Affirmed. Opinion filed August 12, 1912. *Certiorari* denied by Supreme Court (making opinion final).

STEERE, WILLIAMS & STEERE and EDWIN WHITE MOORE, for appellant.

HOLLAND & ELLIOTT, for appellees.

MR. JUSTICE BAUME delivered the opinion of the court.

In 1902, The Delta and Pine Land Company, a Mississippi corporation, filed its bill of interpleader in the Superior Court against Henry F. Benton, Susan D. Benton, Alphonso L. Benton, Harriott S. Ward and Charles W. Ward and Henry P. Merriman, executors of the will of George C. Benton, deceased, wherein it alleged that George C. Benton, deceased, in his lifetime was the owner of 2,000 shares of its capital stock,

and had transferred 950 shares of said stock to his brother Henry F. Benton, 50 shares to his brother Alphonso L. Benton, and 1,000 shares to Charles W. Ward, and that said shares of stock so transferred stood on the books of the corporation in the names of said transferees, respectively; that Susan D. Benton, the widow of said George C. Benton, deceased, had notified complainant that she claimed an interest in the shares of stock so transferred to Henry F. Benton and Charles W. Ward, and demanded of complainant the dividends thereon; that Charles W. Ward had notified complainant that as executor of the will of George C. Benton, deceased, he claimed the shares of stock transferred to Henry F. Benton; that complainant was informed that Harriott S. Ward, a minor, claimed some interest or title in some of said shares of stock, the nature of which claim of title was to complainant unknown; that dividends had been declared on said stock, payable partly in promissory notes, and that an action at law had been commenced against complainant by said Charles W. Ward to recover said dividends; that complainant was willing to pay said dividends to such person or persons as should be entitled thereto, as the court should direct, and offered to bring the same into court, etc.

All of said defendants answered said bill of interpleader, and Susan D. Benton also filed her cross-bill, wherein she alleged that the said shares of stock so transferred by George C. Benton, deceased, to Henry F. Benton and Charles W. Ward, were gifts *causa mortis*, without consideration, made by said George C. Benton, when he was in his last illness and because of his apprehension of a speedy dissolution, and for the purpose of unlawfully depriving said Susan D. Benton of her share thereof as his widow and heir, and with the expectation and intention of receiving the dividends thereon during his lifetime, and of resuming full possession of said shares of stock in the event of his recovery, and said gifts were, therefore, invalid as to her.

Answers were filed to said cross-bill by Henry F. Benton, by George Ward and Henry P. Merriman, as executors of the will of George C. Benton, deceased, and by George C. Ward individually, and by Walter Ayer as *guardian ad litem* of Harriott S. Ward.

The answer of Charles W. Ward admits the transfer to him by George C. Benton, deceased, of 1,000 shares of said stock, but avers that said shares of stock were given to him irrevocably in trust for his daughter, Harriott S. Ward, the granddaughter of said George C. Benton, deceased, and denies that said gift was in fraud of the rights of said Susan D. Benton, deceased.

A decree was entered sustaining the bill of interpleader and ordering the defendants thereto to interplead and adjust their several claims in controversy.

In 1907, Susan D. Benton, the widow of George C. Benton, deceased, died testate, and thereupon Clarence A. Tuttle, the executor of her will, was substituted as cross-complainant.

The matters in controversy relative to the gift by George C. Benton, deceased, to Henry F. Benton of 950 shares of stock, were amicably adjusted between the parties, and the issues remaining to be determined between Tuttle, as executor of the will of Susan D. Benton and Charles W. Ward and Harriott S. Ward, were referred to the master to take and report the proofs together with his findings thereon.

The master found that the gift of 1,000 shares of said stock by George C. Benton in his lifetime to Charles W. Ward was a gift *inter vivos* to the latter in trust for Harriott S. Ward; that said gift was one which said George C. Benton had a lawful right to make and was not in fraud of the rights of his widow, Susan D. Benton, and concluded with a recommendation that a decree be entered dismissing the cross-bill of Clarance A. Tuttle, as executor, at his costs for want of equity. The exceptions filed by said cross-complainant to the Master's report were overruled by the chancellor, and certain exceptions filed thereto by

the defendants, Charles W. and Harriott S. Ward, were passed without any ruling thereon, because not deemed necessary to the disposition of the questions involved, and a decree was entered in accordance with the master's recommendations. Clarence A. Tuttle, as executor of the will of Susan D. Benton, deceased, prosecutes this appeal to reverse said decree.

*In re* Estate of George C. Benton, deceased, 234 Ill. 366, involved the imposition of a tax under the Inheritance Tax law upon the gift of the 1,000 shares here in question, and it was held that the gift was made by George C. Benton, deceased, in contemplation of his death, and that the tax was properly imposed upon it. The facts disclosed by the evidence in the case at bar are not materially variant from the facts as stated by Mr. Justice Vickers, in the opinion of the court in the tax case, and we here adopt such statement.

Alphonso L. Benton, a brother of George C. Benton, testified that he had a talk with George C. Benton, within a month preceding his death, concerning a gift or transfer to Charles W. Ward of the 1,000 shares of stock in question; that he then said he had given to Ward, in trust for his daughter, Harriott, $100,000; that he had nothing to show for it, but he had Ward's word of honor that he would care for it for his daughter, Harriott; that it was in trust to him (Ward); that he said afterwards there was an understanding between them that he should have the income, if he needed it, from that during his lifetime; that he did not say that was a condition of the gift, but that that was the understanding afterwards between him and Ward.

William A. Purcell and Leila Benton testified that George C. Benton made substantially similar statements to them with reference to the gift of said 1,000 shares of stock to Ward.

The testimony of Charles W. Ward in a prior proceeding in the Probate Court relative to said gift was offered in evidence by appellant in the hearing before

the master, and it appears therefrom that upon the occasion of the gift to him of said 1,000 shares of stock, George C. Benton said with reference thereto: "Now, I am giving this to you, and I want you to promise me that you will give it to your daughter Harriott," and that he (Ward) so promised.

First: It is urged that no trust *in praesenti* was created by the terms of the gift.

The two certificates, one for 350 shares and one for 650 shares, had been regularly transferred upon the books of the corporation to Ward when they were delivered to him by George C. Benton. There was an actual change of possession and delivery of the certificates as a gift, and there is no suggestion in the language employed by the donor when the certificates were delivered, that the gift was other than absolute and irrevocable, or that it was not to become effective immediately.

Harriott A. Ward, the granddaughter of the donor, and the intended beneficiary of the gift, was a minor seven years of age. The subject-matter of the gift and the immaturity and incapacity of the beneficiary obviously suggested that the gift should properly be made in trust to her father for the use and benefit of such beneficiary. More apt language might have been employed by the donor to express his manifest intention to create a trust for his granddaughter, and to determine the scope of such trust, but when the intimate relation existing between the parties involved is considered, the precise language employed is of minor significance. In Trubey v. Pease, 240 Ill. 513, the law was announced as "well settled that title to personal property by gift may be passed by delivery of it by the owner to another as trustee for the donee. In such case, delivery to the trustee is deemed in law delivery to the donee, and divests the donor of all control over or right or title in the property, and the gift is irrevocable." It is there further said: "Whether a trust exists is to be determined from the proof, hav-

ing in view all the surrounding facts and circumstances, and the intention of the parties, and the proof must be clear and explicit. The words or acts relied upon as creating the trust must show clearly and unequivocally the intention of the donor.''

In Orr v. Yates, 209 Ill. 222, it is held that no particular form or words are necessary to create a trust.

Mr. Pomeroy says: ''No precise form of words is necessary to create a trust but the intention must be clear. No technical words need be used even the words 'trust' or 'trustee' are not essential.'' Pomeroy's Eq. Jur. (3rd Ed.) 1009.

If it be conceded, contrary to the findings of the master, that the donor reserved the right to the dividends upon the stock during his lifetime, such fact raises no implication that the gift was not to take effect *in praesenti*. Stock v. Seegar, 99 Ill. App. 353; Martin v. Martin, 170 Ill. 18; Hall v. Hall, 118 Ill. App. 544; Seavey v. Seavey, 30 Ill. App. 625. Indeed, a reservation of the dividends only serves rather to emphasize the intention of the donor that the gift of the principal should be absolute and irrevocable.

Although the motives which prompted the gift in question and the gift of 950 shares of stock to Henry F. Benton made at about the same time were the same, the gifts were different in terms and effect. The gift to Ward, in trust for Harriott, was absolute, unconditional and operative *in praesenti*, while the gift to Henry F. Benton was to become effective for distribution, as was said by the donor, ''When I pass away and my debts are paid.''

Second: It is insisted that the gift in question was a gift *causa mortis*, because it was made by the donor in contemplation of death and that the distinguishing feature of such a gift, viz., that it is conditional and only becomes effective upon the death of the donor, necessarily attached. It would serve no useful purpose to enter into an extended discussion of the much

mooted question relating to the precise physical condition and mental attitude of a donor of personal property necessary to constitute a gift *causa mortis* as a matter of law; whether the donor must be *"in extremis,"* or "in his last sickness," or "on his deathbed," or must be in apprehension of "immediate death," or "speedy death," or in fear of "immediate danger then imminent," or whether, as in the case at bar, a gift made merely "in contemplation of death" is sufficient. That a gift, although made in contemplation of death, is a gift *inter vivos,* if the donor manifests an intention that the gift shall be absolute, irrevocable and effective *in praesenti,* cannot be questioned. Estate of Merrifield v. The People, 212 Ill. 400. In *In re* Estate of Benton, *supra,* it was said: "The contention that a gift made 'in contemplation of death' should be construed as equivalent to a gift *causa mortis* is, we think, more plausible than sound."

We are clearly of opinion that the gift here involved was a gift *inter vivos* and not a gift *causa mortis.*

Third: It is contended that, even though the transaction be held to constitute a gift *inter vivos,* that, as it was made in contemplation of death without a valuable consideration, and for the purpose of defeating the rights of the donor's widow, as his heir, in the event she renounced the provisions of his will in her favor, it was void as against her.

As applied to the facts in this case, we conceive the rule announced in Padfield v. Padfield, 78 Ill. 16, reaffirmed in Blankenship v. Hall, 233 Ill. 116, to be decisive against appellant's contention.

In the former case it is said: The doctrine is correctly stated in Kerr on Fraud and Mistake, 220, in a note. It is there said: "There can be no doubt of the power of a husband to dispose absolutely of his property during his life, independently of the concurrence, and exonerated from the claim of his wife, provided the transaction is not merely colorable, and be unattended with circumstances indicative of fraud

upon the rights of the wife. If the disposition of the husband be bona fide, and no right is reserved to him, though made to defeat the right of the wife, it will be good against her.'' In the case at bar, as we have heretofore held, the gift was not colorable, but was absolute and irrevocable. It was made by the donor upon good and sufficient consideration, viz., love and affection for his granddaughter. The donor still retained ample property out of which he made sufficient and suitable provision by will for his widow, the benefit of which provision she elected to renounce.

The decree is right and will be affirmed.

*Decree affirmed.*