# SUPREME COURT

OF

# ILLINOIS.

## SECOND GRAND DIVISION.

### JANUARY TERM, 1866.

David L. Phillips *et al.*, Administrators,

*v.*

The City of Springfield.

1. INTRUDER—*may be ejected by the party in possession.* Where one is in the lawful possession of premises, he has a right to eject an intruder thereon, using no unnecessary force in so doing.

2. CITY OF SPRINGFIELD—*ordinance against fighting, etc.* The ejecting of an intruder from premises by one who is in the lawful possession thereof, without using unnecessary force, is not within the spirit of the ordinance of the city of Springfield, which prescribes a penalty against any person "who shall assault, strike or fight another, or shall be guilty of any misconduct calculated to provoke a breach of the peace."

3. HOMESTEAD—*abandonment—conveyance by the husband.* Where the owner of a homestead moves off the premises, with his family, to a farm belonging to another person, and subsequently the husband alone conveyed away the homestead, this was held such an abandonment as destroyed the homestead right.

4. SAME—*cannot be claimed by the wife in the life-time of the husband.* In this case, the wife voluntarily abandoned her husband while they were living on the farm, and intruded upon the possession of his grantee in their former homestead, insisting she still had a homestead right therein. But it was held that, during the life-time of the husband, no claim to a homestead could exist in her. His domicile, in law, was hers.

APPEAL from the Circuit Court of Sangamon county; the Hon. EDWARD Y. RICE, Judge, presiding.

The facts of this case are sufficiently stated in the opinion of the Court.

Mr. JAMES C. CONKLING, for the appellants.

Mr. CHARLES S. ZANE, city attorney, for the appellee.

Mr. JUSTICE BREESE delivered the opinion of the Court ·

This was an action brought by the city of Springfield against Francis Clinton, before a justice of the peace, upon the complaint of Lucinda Emmons, for a violation of the second section of chapter nineteen of city ordinances, entitled, " An ordinance concerning misdemeanors." The complaint charged in substance, that Clinton assaulted her and shoved and pushed her, and pulled her in a violent manner, and put her property out of her house.

A trial was had by jury, and a verdict of guilty found against Clinton, and a fine imposed of fifty dollars, and judgment rendered therefor, together with the costs.

The defendant appealed to the Circuit Court to reverse this judgment, where, upon a trial had by a jury, a fine was imposed of fifty-three dollars against the defendant. A motion for a new trial was made and denied, and also a motion in arrest of judgment, and judgment entered on the verdict.

The defendant appealed to this court, and, after perfecting the appeal, he died. The errors are assigned by his administrators, David L. Phillips and Anna Clinton; and are: First, that the verdict is against the evidence ; second, the court erred in overruling the motion for a new trial ; third, in overruling the motion in arrest of judgment.

Section two of chapter nineteen, of the ordinance in question, is as follows : " Whoever shall assault, strike or fight another, or shall be guilty of any misconduct calculated to provoke a

breach of the peace, shall be subject to a penalty of not less than three dollars."

The facts in this case, to state them briefly, are as follows: Elias Emmons, the husband of the prosecutor, Lucinda Emmons, was at one time the owner of a house and lot in Springfield, on which he resided with his family. On the 7th of April, 1864, he executed a deed to Clinton for the premises, for the consideration of three thousand dollars, he having moved off the premises, with his family, to a farm in the neighborhood, belonging to Clinton, in April, 1863. Clinton rented the house and lot to one Montgomery, who occupied the premises and paid rent to Clinton up to November 14, 1864, when he moved away, and the same person who took his furniture away in the morning brought the furniture of the in-coming tenant and deposited it in the front door yard, so that part of the furniture of this tenant was in the door yard before all the furniture of Montgomery was taken away. When it was all taken away in the morning of November 14, Montgomery surrendered the possession of the house to Clinton, and gave him the key.

It appears that on the evening of the thirteenth, Mrs. Emmons, under the pretense of an invitation to her, by Mrs. Montgomery, came to the house with her carpet-bag and, remained all night, and was there, in the house, on the morning of the fourteenth, when this change of possession, removal of the goods and delivery of the key took place.

When the defendant came to the house, finding Mrs. Emmons there, he told her he did not want her there, that he wanted the house for his tenants, and then took her carpet-bag and bonnet out of the house and put them on the sidewalk, removed her gently, using no more force than was necessary, and without any disturbance, out of the house.

These facts appear from the testimony of Mrs. Craven, Miss Moffatt and Mrs. Creamer, witnesses on behalf of the complainant.

Mrs. Emmons herself, in her testimony, puts a higher color upon the acts and conduct of the defendant Clinton, and says that after putting her carpet-sack and bonnet out of the house

in the morning, telling her she must leave, he returned in the afternoon, "took her by the shoulders and pushed her out of the house, and through the door yard upon the sidewalk."

It appears also, that Mrs. Emmons had left her husband on the farm, on the 5th of April, 1864, took her children, and came to Springfield to live, where she hired a house and supported herself and her children. She heard that Montgomery was to leave the house on the 14th of November, and she went there the evening before and stayed all night. This appears from her testimony.

The question is, under this state of facts, was Clinton answerable to this ordinance?

This ordinance would seem, from its phraseology, to have reference to ordinary assaults and fighting within the corporate limits, and to such public misconduct as might provoke, among the parties engaged in it, or among the bystanders, a breach of the peace. Nothing of this kind was shown. The complainant, Mrs. Emmons, was an intruder upon the lawful possession of Clinton, and he had a right to put her out without using unnecessary force. *Wyatt* v. *Wood*, 4 Johns. 157. She, doubtless, supposed she had a homestead right in the premises, and the case does not show she joined her husband in the conveyance to Clinton, and she resorted to the invitation, real or feigned, of Mrs. Montgomery, to get into possession, and, when in, to remain. But it is very clear she had no such right. She, with her husband, had abandoned the possession more than a year before her intrusion, and lived together on a farm, until she, of her own will, abandoned him. He was still in life, and being so, no claim to a homestead could exist in her. *Getzler* v. *Saroni*, 18 Ill., 511. It was her duty, as a loyal wife, to reside with her husband ; his domicile, in law, is hers.

We can see nothing in the act of Clinton contrary to law, or against the spirit and purview of the city ordinance. If that ordinance was designed to meet such a case as this, which we do not believe, then Clinton's acts were justifiable under it, as acts done peaceably to rid himself of an intruder upon his possession and premises. He violated no law in doing what he

did. The verdict was contrary to the law and the evidence, and the judgment must be reversed, no cause of complaint having been proved to exist.

*Judgment reversed.*