EDWARD MULLER

v.

EMMA BALKE *et al.*

*Filed at Ottawa January 15, 1895.*

1. DEEDS—*in fraud of rights of wife—how treated in equity.* A grantor who conveys his property in order to prevent the same from being charged with dower in favor of a second wife whom he is about to marry, cannot, upon her death, maintain a suit to set aside the deed.

2. SAME—*of trust—when not void for uncertainty.* A deed conveying a lot with two houses in trust, that the grantor shall occupy them for life and receive all income, paying the repairs, taxes, assessments and insurance, and after his death his widow shall have the right, for life, to occupy one of such houses and draw the rents from the lower story of the other, paying for all repairs and insurance, and the daughter of the grantor's step-son, during the life of the widow, to have the right to occupy or draw the rents of the upper story, paying all taxes and assessments upon the property, and, after the death of the grantor and his widow, to convey the property in fee to such daughter of the step-son, is not invalid for uncertainty or vagueness.

WRIT OF ERROR to the Superior Court of Cook county; the Hon. PHILIP STEIN, Judge, presiding.

On the 20th of December, 1889, plaintiff in error executed the following deed:

"The grantor, Edward Muller, a widower, of Chicago, in the county of Cook, State of Illinois, for and in consideration of one dollar and other valuable considerations to him in hand paid, conveys and warrants to Charles S. Gloeckler, of the same place, the following described real estate, to-wit: Lot eight (8), in the subdivision by George Bickerdike, of the east half ($\frac{1}{2}$) of lot thirty (30), and the north half ($\frac{1}{2}$) of lot thirty-one (31), in Butterfield's addition to Chicago, in the city of Chicago, with the building and improvements thereon, in trust, to manage said property for the parties named in this instrument, in the following manner:

"*First*—That Edward Muller, the grantor, shall occupy said premises during his natural lifetime, and receive all rents and income arising therefrom, paying out of the same all repairs, taxes, assessments and insurance.

"*Second*—After the death of said Edward Muller, if Magdalena Hubacher, whom he is about to marry, survives him as his widow, then said Magdalena shall have the right, during her natural life, to occupy the rear house now on said lot, and to draw all rents accruing from the lower story of the house now on the front part of said premises, said Magdalena to pay for all repairs necessary to be made during her said lifetime on said premises, and the insurance thereof.

"*Third*—That during the life of said Magdalena, Emma Balke, the daughter of Charles C. J. H. Muller, shall have the right to occupy or draw the rents arising from the upper story of the house now on the front part of said premises, paying during said time all taxes and assessments that may be levied on said lot and the improvements thereon.

"*Fourth*—After the death of said Edward Muller, if he should die unmarried to said Magdalena Hubacher, or after the death of said Magdalena, if she should survive said Edward as his widow, then said trustee, Charles S. Gloeckler, shall convey said property, by good and sufficient deed, to Emma Balke, her heirs and assigns, in fee simple.

"*Fifth*—The taxes, assessments, insurance and repairs shall be paid by the respective parties in interest herein, as hereinbefore stated, and it shall not be obligatory on said trustee or his successor in office to see to it that such payments are made.

"*Sixth*—In case either of the parties hereinbefore mentioned shall fail to pay the taxes, assessments and insurance as they become due upon said premises, or to make the necessary repairs thereon, it shall be the duty of said trustee to take immediate possession of said premises,

collect all rents accruing therefrom, and to apply the same, so far as they may go, toward the payment of such taxes, assessments, insurance and repairs.

"*Seventh*—In case of death, resignation or removal from the State of Illinois of said trustee, the circuit court of Cook county, upon the application of any party in interest, shall appoint a successor in trust in the premises.

"*Eighth*—The said Charles S. Gloeckler joins in the execution of this deed, for the purpose of signifying his acceptance of the trust hereby created.

"In witness whereof, the parties hereto have hereunto set their hands and seals this twentieth (20) day of December, 1889."

The deed was signed by Edward Muller by his mark, by the trustee, Gloeckler, and by the witnesses, Francis Lackner and Major McGregor.

In February, 1892, the grantor filed this bill to set aside that deed as a cloud upon his title. The defendants answered, and the cause being heard on bill, answer, replication and proofs, the bill was dismissed for want of equity, at complainant's cost. To reverse that decree he prosecutes this writ of error.

The facts alleged in the bill, upon which the prayer for relief is based, are, in substance, that the complainant, being about to marry a second wife, and desiring to place his property in a condition so that the same would not become charged with dower and so that he could freely manage and control the same, and being old, ignorant, unable to speak or understand the English language, consulted the defendants and the father of Emma Balke as to the proper manner of proceeding to accomplish his said purpose; that under their advice, and accompanied by them, he went to the office of an attorney in the city of Chicago, who, being told by Emma Balke as to what he desired to do, prepared the deed in question, and he made his mark to the same, not knowing its contents or

legal effect, but relying in that regard wholly upon the
assurance of said Emma that it conformed to his wishes.
In short, the theory of the bill is, that he was induced to
execute the deed through the fraud of Emma Balke, who,
it is alleged, bore toward him "a fiduciary relation." It
is then alleged that soon after the execution of said deed
he carried out his purpose of again marrying, but that
his wife only survived until March, 1891, and thereupon
his motive for making the conveyance of his property
ceased, and that any trust created for the purpose of car-
rying out his intention to place his property so that it
should not be subject to dower ought to be declared ter-
minated; that the deed was without consideration, etc. It
is also alleged in the bill that the deed is invalid on its
face because of uncertainty and vagueness. The answer
set up a former adjudication between the parties, and
also denied specifically all the allegations of the bill as
to fraud.

KISTLER & JOSLYN, for plaintiff in error :

If a party, in ignorance of his rights and interests, ex-
ecutes a conveyance, although no fraud is practiced upon
him, a court of equity will relieve against the instru-
ment. 1 Perry on Trusts, sec. 184.

If there is a mistake in the instrument itself, and it
contains what was not agreed or intended, or does not
contain all that was agreed or intended to be in writing,
equity will give relief. *Schaper* v. *Schaper,* 84 Ill. 603 ;
*Shaper* v. *Davis,* 13 id. 398 ; *Sutherland* v. *Sutherland,* 69 id.
481 ; *Hurd* v. *Hall,* 12 Wis. 125 ; *Snell* v. *Insurance Co.* 98
U. S. 90 ; *Garner* v. *Insurance Co.* 110 N. Y. 266 ; 24 N. J.
Eq. 243; *Mitchell* v. *McDougal,* 62 Ill. 498; *Lindsey* v. *Smith,*
58 id. 250; *Heacock* v. *Ely,* 14 Pa. St. 541; *Cooper* v. *Phibbs,*
L. R. 2 H. L. 149; *Wollaston* v. *Tribe,* L. R. 9 Eq. 44; *Lister*
·v. *Hodgson,* 4 Eq. 30.

In case the parties may be restored to their original
situation, it is sufficient to annul the deed if one party

has made a mistake in signing the deed. *Sutherland* v. *Sutherland*, 69 Ill. 481; *Welles* v. *Yates*, 44 N. Y. 525; Perry on Trusts, sec. 186, p. 233; *Mitchell* v. *McDougal*, 62 Ill. 498; *Garrender* v. *Fanchell*, 30 Beav. 445; *Harris* v. *Pepperell*, L. R. 5 Eq. 1; *Wollaston* v. *Tribe*, L. R. 9 Eq. 44.

While it has been held that a mistake or misapprehension of the law will not entitle a party to relief, to this rule there are exceptions, comprising a large class of cases. *Bonney* v. *Stoughton*, 122 Ill. 544; *Heacock* v. *Ely*, 14 Pa. St. 541; *Snell* v. *Insurance Co.* 98 U. S. 90; *Lister* v. *Hodgson*, 4 Eq. 30; 2 Pomeroy's Eq. Jur. secs. 847, 849, 850.

The rule that a meritorious consideration is sufficient to sustain a voluntary settlement is applicable only where the settlement is made to the wife or child of the settlor, a brother, nephew, niece, etc., can not receive. 1 Perry on Trusts, sec. 109, and cases cited; *Hayes* v. *Kershaw*, 1 Sandf. 258; *Ellison* v. *Ellison*, 1 W. & T. Lead. Cases in Eq. 330; *Collars* v. *Patterson*, 137 Ill. 403; *Cressman's Appeal*, 42 Pa. St. 155; *Guffin* v. *Bank*, 74 Ill. 259; *Buford's Heirs* v. *McKee*, 1 Dana, 107; *Faloon* v. *McIntyre*, 118 Ill. 292.

An unreasonable and improvident settlement will be set aside. *Finucan* v. *Kendig*, 109 Ill. 209; *Schaper* v. *Schaper*, 84 id. 603; *Huguenin* v. *Basely*, Lead. Cases in Eq. 406; *Forshaw* v. *Welsby*, 30 Beav. 243; *Patterson* v. *Johnson*, 113 Ill. 559.

When the object for which a deed was executed or a trust created has ceased to exist, the trust will be set aside and the property revert to the grantor or settlor. *Forshaw* v. *Welsby*, 30 Beav. 243.

LACKNER & BUTZ, for defendants in error.

WILKIN, C. J.: This bill is a confession on the part of the complainant that he made the deed which he now seeks to avoid, for an unlawful and inequitable purpose, viz., to place his property in such condition that the same would not become charged with the dower of his intended wife. He does not, on his own showing, come into court with clean hands, and on that ground alone is not in a

position to ask relief in equity. He does not claim in his bill that he was induced by others to form the unlawful purpose, but only that he was taken advantage of in the execution of that purpose. The only lawful means by which he could place his property in a condition so that it would not be charged with the right of dower in the wife he was about to marry, was to divest himself of the title to it by a conveyance made in good faith. That he could not put it out of his hands for the purpose of defeating dower, and when the motive for so doing had ceased, by the death of his wife, invoke the aid of a court of equity to re-invest himself with the title, is too well settled to call for the citation of authorities.

The decree of the Superior Court must, however, be affirmed on the broader ground that complainant wholly failed to prove the allegations of his bill. Emma Balke was the daughter of Charles Muller, a step-son of complainant, and had resided for a time with him. Her father, being about to contract a second marriage, had made a conveyance of his property to the same Charles S. Gloeckler, for the benefit of his children. His first wife having died, and having concluded to marry again, complainant desired to place his property in a condition so that it would not be subject to dower, and having knowledge of the conveyance by Charles Muller to Gloeckler, he consulted with those parties and Emma about the matter. They advised him to consult an attorney, and the four parties accordingly went to the office of Lackner & Butz, where, under the directions of Lackner, the deed was prepared, and afterwards signed, executed and delivered. Lackner, testifying in the case, stated the transaction as follows: "These parties came to Mr. Butz in the first place. He, being busy, sent them to my room. I examined Edward Muller as to what he wanted, spoke to him in the German language, and he said he wanted to make some disposition of his property; that he had some intentions of marrying again, and would like to

place his property in shape. He wanted to provide for one of his relatives, I think he said, and also wanted to make some provision for his future wife. That he had been advised to make a will. We talked the matter over. I explained to him that he could make a will, if he desired, and, of course, could revoke it at any time and change it, but that another way of making a disposition would be to make a deed of trust. If he had any apprehensions that he might have any discussions with his future wife about the matter, and did not want to be importuned by her, perhaps the better way would be to make a deed of trust, and settle the matter once for all. That seemed to strike him favorably. He said so— talked the matter over, and asked me some questions about it and the rights and duties of the trustee, and especially the rights of the trustee, and what he could do with the property, etc., which I explained to him, and thereupon he asked me to draw up such an instrument. I asked him what sort of disposition he wanted to make of the property, and then he spoke of Emma Balke. I think he called her his daughter. I am not sure about that, however. I think he spoke of Charles Muller as his son. I thereupon called in a stenographer, and dictated the deed. After I had dictated it, I had the stenographer read it to us in English, and I translated it to Mr. Muller and all the parties. Mr. Muller thought that was satisfactory. I told him I would have it written up, and he should come the next morning with his trustee, Mr. Gloeckler, who would also have to sign the instrument, and sign it and acknowledge it in our office. He came the next day. The instrument had been written out, and I read it over to the parties in English, and translated it into German. I was very particular about it, because I wanted the old man to understand exactly what he was doing with his property, this being the only piece of property that he had. He seemed to understand it fully. He said so, and thereupon executed the paper in

our office.   I think more than an hour was taken in the first interview, and less than half an hour in the second interview.   I think Edward Muller fully understood what I said to him.   I could understand him very well.   He understood the distinction between a will and a trust deed most clearly.   I explained it to him over and over again.   He asked me about the duties of a trustee, and what right Gloeckler would have to convey the property. I don't think Emma Balke said anything about it at all. Charles Muller may have shared in a word here and there in the conversation.   I don't remember that.   The bulk of the conversation was carried on between Muller and myself.   I think Gloeckler asked a good many questions in regard to his own doings.   At first he did not care to undertake the duties of a trustee.   I had not known the parties before.   I knew Mr. Gloeckler, but the other parties I did not know before that day.   I talked in German. I think Edward Muller talks in low German.   I understand it very well, however, and I know he understood me from the answers that he gave."   On cross-examination he said: "I was not aware that Edward Muller was deaf.   He answered my questions.   He understood me.   I have every reason to think he understood me."   The testimony of Emma Balke, Charles Muller and Gloeckler is to the same effect.   The latter, speaking of the interview with the attorney, says: "Well, there was probably something said about a will, or 'piece of paper,' as the old gentleman put it.   He wanted to draw up something whereby Emma Balke would become the owner of this property when he was no more and his wife was no more. That was simply talked of very briefly between Mr. Lackner and Mr. Muller, the old gentleman.   All this conversation went on in German."

The only evidence in the record contradictory of that of these witnesses is the testimony of the complainant himself, and if it were conceded that it fully supports every allegation of the bill, it certainly could not be

claimed that it should be given greater weight than that of the four testifying to the contrary.    We entertain no doubt as to the correctness of the decree of the Superior Court on the facts of the case.

The point that the deed is void upon its face is without force.    The instrument itself is a complete refutation of the argument made against it.    The authorities cited by counsel have no application to the facts of this case.

The decree of the Superior Court will be affirmed.

*Decree affirmed.*