EMMA V. BLANKENSHIP, Plaintiff in Error, *vs.* WALTER HALL *et al.* Defendants in Error.

*Opinion filed February 20, 1908—Rehearing denied April 8, 1908.*

1. DEEDS—*act of recording deed to infant is prima facie evidence of delivery.* Delivery of a deed conveying land to an infant may be shown by facts and circumstances showing the grantor's intention to presently part with the title and vest it in the grantee; and the recording of the deed by the grantor, or by his direction, is *prima facie* evidence of delivery.

2. HUSBAND AND WIFE—*section 12 of Dower act construed.* A conveyance of land by the husband without the deed being joined in by the wife is not in fraud of the wife's right to take, under section 12 of the Dower act, one-half of the husband's property in lieu of dower in the estate of which he "died seized," since in such case she takes as an heir, and not by virtue of her rights as widow.

3. SAME—*effect where husband disposes of land to deprive wife of her rights.* Where a husband disposes of part of his lands by deeds not joined in by his wife and devises the remainder of his estate by will to other persons, the wife, in case there are no chil-

dren, may elect, under section 12 of the Dower act, to take one-half of the estate remaining after the payment of debts, in lieu of dower in the lands of which the husband died seized; but she is also entitled to dower in the lands conveyed before the husband's death.

4. SAME—*husband cannot deprive wife of widow's award.* A husband cannot, by disposing of his property in his lifetime without his wife's consent, deprive her of her right to the widow's award, since the widow's award is, by statute, a debt against the estate, and the widow is a creditor to the amount of the award.

5. SAME—*when wife is entitled to homestead in land conveyed.* Where a wife is compelled by her husband, against her will and without her fault, to live apart from him, he cannot deprive her of her homestead estate in the land upon which his homestead is located by conveying the land by deed in which the wife does not join.

6. DOWER—*election provided for in section 12 of Dower act is confined to property of which husband died seized.* Under section 12 of the Dower act, providing that where a husband dies testate, leaving no children, the surviving wife may elect to have, in lieu of dower in the estate of which the husband *died seized,* one-half of all the estate which shall remain after the payment of debts, the wife is not entitled to claim one-half of the property which has been conveyed by the husband in his lifetime even though she did not sign the deeds, and as to such property she is limited to her dower and homestead rights.

HAND, C. J., dissenting.

WRIT OF ERROR to the Circuit Court of Fayette county; the Hon. W. M. FARMER, Judge, presiding.

Plaintiff in error filed her bill July 20, 1904, in the circuit court of Fayette county. By her amended bill filed May 8, 1905, she alleged that she was married to John Blankenship about thirty-four years theretofore; that they accumulated by united industry two hundred acres of land in section 28 and forty acres of land in section 25, all in township 5, range 1, east, in said county; that plaintiff in error was adjudged insane and sent to the Anna asylum in 1892 and remained there until pronounced restored and discharged, in May, 1898; that about May 18, 1895, her husband bought and had deeded to himself a tract of forty

acres in section 3, in the same township and range, improved with a house and barn, and moved there with all his furniture, and continued to live there until he died, July 4, 1904; that shortly after he moved there, one Mary Hall and her husband, Henry Hall, moved there also, and that while the three were thus living in said house and complainant was confined in the Anna asylum there were born to Mary Hall two children, Walter Hall and Carl Hall; that December 19, 1898, Blankenship executed a will giving a life interest in one-half of all his real and personal property to Walter Hall and at the death of said Walter to go to the heirs of his body, but if he died without heirs then the same to go to Carl Hall and the heirs of his body, and giving a life interest in the other half to Carl Hall and at Carl's death to go to the heirs of his body, but if he died without heirs of his body the same to go to Walter Hall and the heirs of his body; also providing that if Carl and Walter both died without heirs of their bodies then such property should revert to the estate of John Blankenship and be distributed in a certain specified manner.

The bill further alleges that when the authorities of the asylum at Anna notified John Blankenship that plaintiff in error was sufficiently restored to return home he bought a house and two lots in Shobonier, Illinois, for $455 and furnished the house with cheap, scanty furniture; that he met his wife at the train on her return and took her to said house in Shobonier, where he left her, informing her that she should live in said house but that he would not live with her; that while she protested, she remained there and he returned to his home on said section 3 with the said Halls and there lived until his death; that in 1900 Blankenship bought forty acres in section 10 and paid for it with his own money but had it deeded directly from the vendor to Mary Hall; that while plaintiff in error was in the asylum Blankenship sold for value the forty acres in section 25; that the said John Blankenship executed, April 5, 1902, a quit-claim deed, for

a consideration of one dollar, to Carl Hall and the heirs
of his body, to said forty acres in said section 3 and eighty
acres of said land in section 28, for and during the natural
life of said Carl and at his death to go to the heirs of his
body, but if he left no heirs of his body then to Walter Hall
and the heirs of his body; that on the same date he executed
a deed to Walter Hall of the remaining one hundred and
twenty acres in section 28 with conditions of like nature as
in the deed to Carl, each deed reserving a life estate to the
grantor; that plaintiff in error did not sign either of these
deeds; that said land deeded to said Carl and Walter was
worth over $9600, and was then all the land owned by said
Blankenship, except the two lots in Shobonier; that Blank-
enship did not deliver said deeds but intended to retain the
same until his death; that December 9, 1903, believing he
was about to die immediately, he handed them to Mary Hall
and they were thereupon recorded; that said deeds were
never, in fact or in law, delivered, and were fraudulent and
void as against the wife and creditors. The bill alleges that
Blankenship gave Mary Hall checks on his bank account
amounting to $650, but that matter is not in controversy
here. The bill further alleges that at his death he left the
plaintiff in error, his widow, and no children or descendants
of children, and left a sister, nieces and nephews surviving
him, naming them; prays for partition between the widow
and heirs of said Blankenship and that said Halls be re-
quired to disclose all personal property of said estate. The
Halls and all the heirs, as well as the executor of the will,
were made parties defendant.

The executor and one of the nephews filed an answer
admitting substantially all the facts set up in the bill and
praying that their answer might be considered a cross-bill.
Mary and Henry Hall answered, denying, among other
things, that Blankenship's homestead was in section 3 but
averring that he stayed with them there as a boarder; as-
serting that the deeds mentioned in the bill were executed

as the free and voluntary acts of said Blankenship, and that the forty acres now standing in the name of Mary Hall were purchased with her own money. Carl Hall and Walter Hall filed their answers by their guardian *ad litem,* in the usual form.

After a hearing the court entered a decree finding substantially as follows: That John Blankenship died testate, devising and bequeathing to Carl and Walter Hall, share and share alike, all the property, real and personal, of which he died seized; that plaintiff in error, his widow, has renounced said will under the statute and is entitled to an undivided one-half interest in all the real estate of which said Blankenship died seized and one-half of his personal property; that prior to his death he conveyed, by quit-claim deed, said forty-acre tract in said section 25 to John T. Blankenship, and that the said Blankenship mortgaged the said tract to one Burtchi and afterwards conveyed it to one Metzger; that plaintiff in error did not sign or acknowledge said conveyances and is entitled to dower in said land, and that it be set off to her; that April 5, 1902, said John Blankenship, by quit-claim deed, conveyed all interest in the forty acres in said section 3 and eighty acres (describing it) in said section 28 to Carl Hall, as heretofore stated; that Blankenship's homestead was located on said forty-acre tract in section 3, and that by said deed no title passed to the homestead, consisting of $1000 worth of land in said forty acres in said section 3, because it was not signed and acknowledged by plaintiff in error; that Blankenship left him surviving a widow but no children or descendants of children; that plaintiff in error is the owner in fee of an undivided one-half in said homestead of $1000 worth of said forty acres and is entitled to a life estate in the other undivided one-half of said $1000 worth of land, and further is entitled to dower in one-third of all the balance of the land conveyed to said Carl and to have it set off and allotted to her in this proceeding; that the heirs of said John

Blankenship (naming them) are entitled to an undivided one-half interest in the $1000 worth of land in the homestead of said Blankenship, deceased, subject to the life estate of plaintiff in error; that on said April 5, 1902, by quit-claim deed, said Blankenship conveyed one hundred and twenty acres in section 28 (describing it) to Walter Hall, as heretofore stated; that this deed to Walter and the one to Carl were recorded in December, 1903; that the said plaintiff in error is entitled to recover dower in one-third of all of the lands conveyed by said deed; that at his death said Blankenship owned in fee said lots in Shobonier; that by virtue of the renunciation by plaintiff in error she is the owner in fee simple of an undivided one-half interest in said lots, and by the operation of said will the said Carl and Walter Hall are each the owner of an undivided one-fourth interest in said lots; that the said John Blankenship could not, by any act of his, avoid the liability of his estate to pay plaintiff in error her separate award; that if the property of said Blankenship, deceased, not conveyed in his lifetime should be insufficient to pay said widow's award in due course of administration, the residue is made a lien upon the land conveyed to Carl and Walter Hall. It is further ordered that plaintiff in error shall have set off to her $1000 worth of land in said forty acres in said section 3 as her homestead, and have a one-third part of the other land so conveyed as above by her late husband without her signature to the deeds; that the Shobonier lots be partitioned between her and said Carl and Walter Hall, and that a partition of said forty-acre tract in said section 3 be made between plaintiff in error and the heirs of said John Blankenship, according to their respective interests; that Mary Hall is the owner of said forty-acre tract in said section 10, having purchased it and paid therefor with her own money. An appeal was prayed from this decree by the several parties but not perfected. A writ of error was sued out by plaintiff in error alone.

JOHN A. BINGHAM, for plaintiff in error.

BROWN & BURNSIDE, (J. T. BULLINGTON, guardian *ad litem*,) for defendants in error.

J. M. ALBERT, Exr., *pro se.*

Mr. JUSTICE CARTER delivered the opinion of the court:

Plainly, from this record, Blankenship intended to deprive his wife, so far as he legally could, of all interest in his property. He advised with his lawyer concerning this at various times, beginning when his wife was still in the asylum. He also consulted with the lawyer as to his right to a divorce, and there is evidence to indicate that he went to South Dakota to secure one. Finding that he could not get a divorce against an insane person, he set about to deprive her, so far as he could, of her interest without a divorce. When he found she was to be sent home, restored in mind, he planned to have her live apart from him. It is charged in the pleadings that Mary Hall led Blankenship to believe that Carl and Walter Hall were his children. No evidence was offered to sustain this allegation and the record does not justify a finding to this effect. He made quitclaim deeds conveying this property to Carl and Walter about the time he made his will. The evidence does not disclose whether he ever attempted to deliver this first set of deeds. It appears that they were afterwards destroyed. In February, 1902, his attorney drew quit-claim deeds conveying this property to Carl and Walter. These deeds, in the presence of one Foucht, were delivered by Blankenship to the two boys, respectively, he receiving from each of them, as the deed was delivered, a silver dollar. The deeds, however were kept, after their delivery, at the house occupied by said Blankenship and the said Halls. Becoming dissatisfied with the wording as to the matter of dower, Blankenship had another set drawn up by his lawyer.

These, in the presence of the same witness, were delivered to the boys in exchange for the deeds given them in February, the old deeds being thereupon destroyed. At the time both these sets of deeds were delivered, the evidence tends to show it was Blankenship's intention not to have them recorded or have anyone know that they were made until after he died. In 1903 he found he was sick with an incurable malady,—Bright's disease. The local physician advised him to consult a specialist. It appears that he visited Hot Springs, Arkansas, twice, for relief. At the time of his second return, in November, 1903, he became convinced from what his medical advisers, as well as people at Hot Springs, told him, that he had no chance of recovery. His malady seems to have been much more severe at some times than at others. In December, 1903, he was feeling very poorly and evidently did not think he had long to live. At this time he instructed Mary Hall to take the deeds and have them recorded. She testified that when Blankenship delivered these deeds to the boys they brought them to her and she put them away in the house; that later on she rented a box in a safety deposit vault in town and kept them there; that in December Blankenship told her he had been advised not to let the deeds go on record until after he died, but that he was suspicious that if he followed that plan they would be null and void, and that therefore she should take them and file them for record; that she then took the deeds from the safety deposit vault and recorded them, as he directed. Her evidence in this regard is uncontradicted. Blankenship shortly thereafter told Foucht that he had the deeds recorded. The public records show they were recorded in December, 1903.

The evidence fairly justifies the conclusion that Blankenship kept control of these deeds up to the time he ordered them recorded. In order to have a deed effective there must be delivery, but the intention of the grantor is the controlling element on the question of delivery. (*Creighton* v.

*Roe,* 218 Ill. 619.) In deeds made for the benefit of infants the presumption of law is in favor of their delivery, and the burden of proof is on those denying it to show clearly that there was no delivery. (*Rivard* v. *Walker,* 39 Ill. 413.) The delivery of a deed conveying land to an infant may be shown by facts and circumstances indicating an intention on the part of the grantor to part with his title and vest it in the grantee. (*Masterson* v. *Cheek,* 23 Ill. 72.) The act of recording, alone, is *prima facie* evidence of the delivery. (*Union Mutual Life Ins. Co.* v. *Campbell,* 95 Ill. 267; *Byars* v. *Spencer,* 101 id. 429.) Blankenship made three sets of deeds to these boys. While he stated to the witness Foucht, in making the delivery of the second and third sets, that he had called him there to witness the delivery, the payment of the dollar by each of the boys as to the second set and the exchange of the second set for the third set might well be held to be an empty and meaningless formality. Blankenship's intention, however, was evident; he intended to make a delivery of these deeds. We think on this record it must be held that they were delivered.

No question is raised here as to the finding of the decree concerning the forty acres deeded to John T. Blankenship, and as Mary Hall has not been made a party to this writ of error, her right to the forty acres in said section 10 cannot be passed upon.

No question is made in this proceeding as to the right of the grantor to dispose of his personalty, as disposed of, prior to his death, nor as to the disposition of the property made in the will. The questions raised and discussed on this record have reference solely to the property conveyed by the deeds in question to the boys, Carl and Walter Hall. The main contention of plaintiff in error is that those deeds were a fraud on her marital rights to take a one-half interest in the real estate in lieu of dower, under section 12 of the Dower act. (Hurd's Stat. 1905, p. 769.)

Section 4 of the Frauds and Perjuries act (Hurd's Stat. 1905, p. 1102,) provides that "every gift, grant, conveyance, * * * made with the intent to disturb, delay, hinder or defraud creditors or other persons, * * * shall be void as against such creditors, purchasers and other persons." Do the words "creditors and other persons" fairly include the wife, with reference to her right to take a one-half interest in real estate in lieu of dower? In *Tyler* v. *Tyler,* 126 Ill. 525, we said (p. 536) : "If the wife be not, technically, a 'creditor' she surely comes within the language 'other persons,' and she is, obviously, as much injured by such a conveyance as any creditor can be." This was said by the court in discussing the right of a wife to separate maintenance. We held in *Draper* v. *Draper,* 68 Ill. 17, that after bill filed for divorce and alimony, a conveyance with intent to deprive the wife of alimony was fraudulent. To the same effect is *Scott* v. *Magloughlin,* 133 Ill. 33. The same ruling has been made in other jurisdictions in cases involving the question of alimony and separate maintenance. *Murray* v. *Murray,* 56 Am. St. Rep. (Cal.) 97; *Picket* v. *Garrison,* 14 id. (Iowa) 220; *Starr* v. *Kaiser,* 41 Ore. 170; *Tobey* v. *Tobey,* 100 Mich. 54.) The general rule is that a man cannot convey, by way of gift, his real estate, just prior to his marriage, without the consent of the woman about to be made his wife, and thus deprive her of dower. (*Muller* v. *Balke,* 154 Ill. 110; *Higgins* v. *Higgins,* 219 id. 146.) But this court has held in *Daniher* v. *Daniher,* 201 Ill. 489, that while such a conveyance is *prima facie* a fraud upon the dower rights and the burden is upon the grantee to establish its validity, yet that a conveyance made to the grantor's children by his first wife and shown to be a reasonable provision for such children was not fraudulent as to the second wife. In this last case the authorities on this subject were reviewed at length. In the later decision of *Jones* v. *Jones,* 213 Ill. 228, the doctrine stated in the *Daniher case* was re-affirmed.

In discussing the right of the husband to dispose of his personal property, during his lifetime, by gift, in *Padfield* v. *Padfield,* 78 Ill. 16, we quoted with approval from Kerr on Fraud and Mistake the following: "There can be no doubt of the power of a husband to dispose absolutely of his property during his life, independently of the concurrence and exonerated from the claim of his wife, provided the transaction is not merely colorable and be unattended with circumstances indicative of fraud upon the rights of the wife. If the disposition of the husband be *bona fide* and no right is reserved to him, though made to defeat the right of the wife, it will be good against her." This case has been cited and the rule there laid down followed in many jurisdictions. (*Wright* v. *Holmes,* 3 L. R. A. (Me.) 769; *Robertson* v. *Robertson,* 3 id. (Ala.) 774; *Small* v. *Small,* 54 Am. St. Rep. (Kan.) 581; *Lines* v. *Lines,* 24 id. (Pa.) 487.) In a note at the end of this last case it is stated that this rule may not apply when the husband is in the immediate expectation of death and attempts by conveyance to accomplish the purpose of a will. See, also, on this point, *Walker* v. *Walker,* 27 L. R. A. (N. H.) 799; *In re Young's Estate,* 51 Atl. Rep. (Pa.) 1036; *Manikee's Admr.* v. *Beard,* 85 Ky. 20; *Dunn* v. *German American Bank,* 109 Mo. 90.

The precise question for decision in this case does not seem to have been decided in any jurisdiction where the right of dower and the right to renounce and take in lieu of dower were the same as in this State. In jurisdictions where widow's dower depends upon the seizin or possession of the husband at the time of his death, it has been held that a conveyance made in fraud of the wife's dower is void as to her. (*Jiggets* v. *Jiggets,* 40 Miss. 718; *Jenny* v. *Jenny,* 24 Vt. 324; *Martin* v. *Martin,* 48 Tenn. (1 Heisk.) 645; 14 Cyc. 946, and cases cited.) In *Smith* v. *Smith,* 34 L. R. A. (Colo.) 49, the court held that it was a fraud upon the rights of the wife when the husband stripped him-

self of all his property just before his death, by delivering
to his children deeds of real estate, made some years before,
and giving a check for money, constituting all his personal
property, after he had obtained the full benefits of the prop-
erty to the end of his life.   That decision states that the
right to dower has been abolished in Colorado, but that un-
der the statute the wife is entitled to one-half of the hus-
band's estate, both real and personal, and that this right
could not be defeated by transfer, such as the one in ques-
tion.   The court there held that the transaction was merely
colorable.   That court, in the later decision of *Phillips* v.
*Phillips,* 30 Colo. 516, reviewed the *Smith case, supra,* and
held where a husband executed deeds of his property to his
daughters and a few months before his death delivered them
and they were placed on record, that even though he re-
tained general supervision of the property until his death,
collecting the rents and paying the taxes, as there was no
evidence that he delivered the deeds because he anticipated
death in the near future, they should not be held testa-
mentary in character.   In *Jones* v. *Somerville,* 84 Am. St.
Rep. (Miss.) 627, it was held that fraud on the marital
rights could not be predicated of a voluntary conveyance
by the husband or wife of real or personal property made
to prevent the other from inheriting; that there was no
distinction in this regard between the right of a husband
or wife and the right of a child to inherit.   A case very
like, on the facts, the one we are now considering is *Leon-
ard* v. *Leonard,* 181 Mass. 458.   It was there held that a
deed of real estate reserving a life estate in the grantor,
made by a husband principally for the purpose of depriving
his wife of her statutory share in his estate, but also given
in consideration of care bestowed and to be bestowed upon
the grantor as long as he lived, was valid against the gran-
tor's widow.   The wife's rights in the husband's property
are somewhat different under the Massachusetts laws from
what they are in this State.

Each case must be considered in the light of the special facts and the law of the jurisdiction where decided. If a man dies intestate in this State without children or descendants of a child or children, his wife, as his heir, inherits one-half of his real estate after payment of debts, (Hurd's Stat. 1905, chap. 39, par. 3, sec. 1, p. 763; *Tyson* v. *Postlethwaite,* 13 Ill. 727; *Sturgis* v. *Ewing,* 18 id. 176;) and has her dower as to the other half of the real estate. (Hurd's Stat. 1905, chap. 41, sec. 1, p. 768; *Sutherland* v. *Sutherland,* 69 Ill. 481.) If he dies testate she has a dower interest in all the lands of which he was seized during coverture and which she has not relinquished in legal form, and she may, under section 12 of said Dower act, (Hurd's Stat. 1905, p. 769,) where there is no child or descendants of a child, elect to take, in lieu of dower in the estate of which the husband died seized and of any share of the personal estate which she may be entitled to take with such dower, one-half of all the real and personal estate which shall remain after the payment of the just debts and claims against the estate of the deceased husband. (*Brown* v. *Pitney,* 39 Ill. 468; *Ringhouse* v. *Keever,* 49 id. 470; *Gullett* v. *Farley,* 164 id. 566; *Laurence* v. *Balch,* 195 id. 626.) She takes this one-half of the real estate of her husband of which he died seized, as his heir. (*Lessley* v. *Lessley,* 44 Ill. 527.) The right of dower, under section 1 of the Dower act, is in all the real estate of which the husband was seized of an estate of inheritance during the marriage, and this includes equitable estates. The husband cannot deprive his wife, by will or otherwise, of this right of dower without her consent, but under section 12 of the Dower act the provision is that she has the right to elect to take in lieu of dower only the real estate of which he died seized. In discussing the construction that should be put upon this provision of the statute in *Brown* v. *Pitney, supra,* this court, speaking by Justice Lawrence, said (p. 481) that this one-half in fee is given in lieu of dower in "all

classes of estates in which dower is demandable, and this, by express provision, includes equitable as well as legal estates of inheritance. The only limitation is, that the one-half in fee can be substituted for the one-third for life only in the estates of which the husband died seized. To have allowed the substitution in regard to lands conveyed by him in his lifetime, without joinder by the wife, would have been palpably unjust."

There has been a manifest desire on the part of the lawmakers of this State to provide for the support of the wife, not only during the lifetime of the husband but also after his death, until, as this court said in *In re Taylor's will,* 55 Ill. 252, on page 259: "We do not go too far when we say that it has become a sort of common law in this State that this support shall be in all cases one-third of the husband's real estate for life, and one-third of the personal estate forever, which shall remain after the payment of debts."

In considering the widow's rights in an intestate estate, this court said, speaking by Justice Scholfield, in *Sutherland v. Sutherland, supra,* (p. 486): "The widow claims, here, one-half of the real and all of the personal estate, not in her right as dowress, but as heir-at-law. The right of dower exists independently of the rights of the heir, and it is in no way affected by them. The right to dower is perfect where there has been an ownership in real estate by the husband during coverture and the wife survives the husband, although the ownership by the husband may have been but momentary. The inchoate right to dower attaches the moment the husband's right to the realty attaches during coverture, and he cannot convey or encumber the property so as to divest or prejudice that right without the wife's consent, given in the manner provided by statute; nor can his creditors, by any proceeding to be instituted by them, destroy or impair the right. The heir, on the other hand, has no interest whatever in the property until the intestate's death, nor can it even be known, certainly, until that event

233—9

shall have happened, who will be the heir. The inheritance may be conveyed away by the intestate in his lifetime or it may be exhausted by creditors after his death, so as to deprive the heir of everything to which he might otherwise be entitled. The dissimilarity in the origin, character and duration of the two estates must be plain to every apprehension." In *Mowbry* v. *Mowbry,* 64 Ill. 383, this court, in discussing this same subject, said (p. 386) : "She held her dower and specific articles of personal property independent of the wishes of her husband, and he was absolutely powerless to deprive her of her rights to the same, by will or other means, unless it might have been to the personal property, by its sale and the expenditure of the money or by giving it away in his lifetime."

Counsel for plaintiff in error places great reliance upon *Higgins* v. *Higgins, supra.* In that case the husband conveyed his real estate to his children by his first wife, before his second marriage, without the knowledge or consent of the second wife. He claimed afterwards that the deed was not delivered until after the marriage. It was not found necessary in that case to decide whether the delivery of the deed was made before or after the marriage. What was said in that case with reference to the marital rights of the wife having the same protection as the rights of a creditor was stated with reference to the widow's dower right. In that case there were children, and the second wife had no right to take, in lieu of dower, the half of the real estate. What was said in a number of the other decisions relied on by plaintiff in error was also stated with special reference to the widow's dower rights.

The rights to dower, widow's award and to inherit one-half, in the absence of children or their descendants, are regulated by law, and the law could be so changed as to deprive the widow of all these rights. Manifestly, the legislature intended that her right under said section 1 of the Dower act might be in different real estate, subject to en-

tirely different regulations, from her right under said section 12 of the Dower act to take, in lieu of her dower, one-half the real estate of which her husband died seized. From a comparison of these two sections, alone, the conclusion is almost irresistible that the husband could convey real estate in his lifetime without the wife joining and his wife would not be deprived of her dower right thereto, but that if he did so convey his real estate she would be deprived of her right to take one-half of such real estate in lieu of dower. By the great weight of authority in this and other jurisdictions the intent to deprive the wife of the right to take one-half of the real estate, which otherwise she might claim, is not enough to defeat these deeds.

Cross-errors have been filed to the finding of the chancellor in the decree below giving the widow a lien as to her award on the real estate conveyed by the deeds in question if the personal property be insufficient. The words "creditors and others," in the statute on frauds and perjuries, has generally been liberally construed, the word "creditors" not being used in a strict technical sense, but applying to all persons having demands, accounts, interest or cause of action. (*Waldradt* v. *Brown,* 1 Gilm. 397.) The character of the claim, if it is just and lawful, is immaterial, and a contingent claim is as fully protected as one that is absolute. (Bump on Fraudulent Conveyances,—4th ed.—secs. 502, 503; 14 Am. & Eng. Ency. of Law,—2d ed.—p. 251, and cases cited.) The widow's award provided for in section 74 of the Administration act (Hurd's Stat. 1905, p. 117,) is plainly, by statute, a debt against the estate and the widow a creditor for the amount of the award. While we have held in *King* v. *Goodwin,* 130 Ill. 102, that the widow's claim for her award is against the estate of her deceased husband, and if there is no estate she will have nothing to rely on for its payment, still we are inclined to hold, under the reasoning of the decisions heretofore cited, and, as we believe, in accord with sound

public policy, that Blankenship could not deprive his wife of her right to her award by disposing of his property previous to his death, in the manner set forth in this record.

Defendants in error also question the finding of the court as to plaintiff in error being entitled to a homestead right in said section 3. It is the duty of the wife to reside with the husband and his domicile is hers. (*Phillips* v. *City of Springfield*, 39 Ill. 83.) The residence of the wife follows that of the husband. (*Kenley* v. *Hudelson*, 99 Ill. 493.) It is against the policy as well as the terms of the Homestead Exemption law to permit the husband to deprive the wife of her right to claim the homestead except by her voluntary removal, with his family, from the place. (*Allen* v. *Hawley*, 66 Ill. 164.) It might well be doubted whether the husband could deprive his wife of her homestead rights in said section 28, where they resided when she was taken to the asylum. When she returned he compelled her to remain, clearly against her will, in a house in Shobonier, apart from him. We think it cannot be claimed that her homestead, at the time of her husband's death, was on the Shobonier property. Her husband never lived with her there, and we think, both by reason and authority, the decree of the court as to her homestead rights in section 3 is in accordance with law.

Counsel for plaintiff in error states that the deeds were void because they attempted to limit a fee on a fee. This contention is without merit.

We have considered all the points raised in the briefs. In our opinion the deeds in question must be upheld, except as to the homestead rights and the widow's award. The decree of the circuit court will accordingly be affirmed.

*Decree affirmed.*

Mr. JUSTICE FARMER took no part in the decision of this case.

Mr. CHIEF JUSTICE HAND, dissenting.