*624 OPINION.
Lansdon:
Preliminary to our consideration of the several issues presented by the record, we are called upon to determine the status of the appeal of Michael Duggan, Docket No. 17209, whose death *625 is suggested by the attorneys for the appellants in their motion to dismiss, filed at the close of the hearing.
The record shows that Michael Duggan died on February 24,1928, nearly two years after his appeal to this Board had been perfected and before hearing or decision thereof, and also that the action is one which survives against his estate. The single duty imposed by law on the Board of Tax Appeals is to review the administrative determinations of deficiencies or liabilities asserted by the Commissioner, and to redetermine the amounts, if any, due the Government. It is clear, therefore, that jurisdiction resulting from an appeal here, in conformity with law and our rules of procedure, continues unimpaired until our functions are terminated by decision or dismissal. There is no abatement of an appeal upon the death of the appellant, and the motion to dismiss is, therefore, overruled. Green v. Watkins, 6 Wheat. 260; March v. Supreme Lodge Knights of Honor, 29 Fed. 896.
The petitioners’ several causes of action will be discussed, the merits thereof determined, and the questions raised decided in the order in which they are argued in their brief. Their first contention is that “ No profit can be imputed to the corporation upon a sale of assets made by the stockholders after a distribution in kind in liquidation.” This allegation requires us to determine whether the sale of capital assets which resulted in the alleged gain which the respondent here seeks to tax was made by the Johnston City & Big Muddy Coal & Mining Co., hereinafter sometimes designated the corporation, or by the single stockholder of such corporation after the receipt by it of such property as a liquidating dividend distributed in kind. The parties agree that if the sale was made by the corporation it had net taxable income in the year 1920 in the amount of $736,626.56 and that there is a deficiency in payment of tax liability thereon in the amount of $316,620.61.
Counsel for petitioner throughout the hearing and in their briefs repeatedly declare that the Board is herein called on only to determine a simple question of fact. Whether the sale was made by the corporation or by the Duggan Trust is, of course, a question of fact, but it is a fact that can be ascertained only by inquiring and deciding whether the procedure adopted for the purpose of making the sale without incurring tax liability was legal in all its material- steps. Not later than March 20, 1920, the corporation and the purchaser agreed on the consideration and terms of the sale, and not later than the 25th of March the purchaser completed all its arrangements for necessary funds and notified the corportion that it was ready to close the deal.
The purchaser was not concerned with any question of taxes, but desired a good title to the assets, for which it had agreed to pay *626 $1,800,000 in cash. Much of the property was real estate and it was necessary to satisfy the statute of frauds by corporate acts of record sufficient to complete the deal and pass legal title to the assets involved from the corporation to the purchaser. Accordingly, a sales contract purporting to be an agreement between the Duggan Trust and the purchaser was drawn by counsel for the parties thereto. This contract was dated and signed as of March 31, 1920, and thereafter nothing remained to complete the sale except the delivery of the property with title by the seller upon receipt from the purchaser of the stated consideration.
On March 81,1920, the directors of the corporation, James Duggan, Henry Duggan, and Holland, adopted a resolution relating to the distribution of property no longer needed in the business and called a meeting of the stockholders for 10 a. m. of the same day. At such called meeting, in which none of the stockholders were present in person and all were represented by proxy theretofore given to Henry Duggan, who on that date was neither a stockholder nor a beneficiary of the trust, the directors were authorized to distribute in kind certain of the assets of the corporation to the stockholders — that is, to the Duggan Trust. At 11 a. m. the directors again met and authorized James Duggan, the president, to act in behalf of the company and together with the secretary, Holland, to make and execute all proper - instruments incident to such distribution. Whether these meetings were in fact held and, if so, just what was legally done, we are unable to determine. The records introduced in evidence are made up of filed in skeletons of carbon copies, pasted into the minute book without regard to the sequence .or nature of the meetings they purport to report and, in some instances, signatures and entries appearing therein are repudiated by the secretary. It seems clear, however, that, the corporation at no time ever intended to part with title to the assets sold until a conveyance was made to the purchaser and it received the purchase price. This fact is shown from the circumstance that it retained the deeds, theretofore made to James Duggan until April 9, when the money was counted out to it in the office of the Old Ben Coal Co. At this time, but not until the checks had been verified by him, its attorneys directed the secretary of the corporation to surrender the deeds to James Duggan, who simultaneously therewith delivered the instruments that passed the title to the purchaser. We think the inferences fairly deducible here show conclusively that a sale was contemplated long before the alleged distribution in kind; that except in the event of a sale the corporation intended to continue to hold, and operate these properties; and that, the delivery of the deeds and bill of sale to James Duggan, an act necessary to. the alleged distribution, was wholly contingent on the *627 completion of the sale. The unconditional delivery and acceptance of a deed as an essential requirement to pass title is too elemental for serious discussion and must be conceded. Weber, etc. v. Christen, etc., 121 Ill. 91; 11 N. E. 893; Blankenship v. Hall, 233 Ill. 116; 84 N. E. 192.
Even if accomplished as claimed by the petitioners, the procedure on March 31, all of which was a part of a program previously planned for the admitted and we believe the sole purpose of avoiding any tax to the corporation on gains which it was then known would be realized from a sale of capital assets not merely contemplated but actually made as to its terms and conditions, is questionable in several particulars. Inasmuch as the evidence discloses that the disposition of corporate property proposed by the directors and authorized by the stockholders was to include capital assets in addition to surplus earnings, it is clear that either a partial liquidation by reduction of capital or a complete liquidation as a step towards dissolution was contemplated.
That the corporation transferred the assets in controversy to its stockholders “ in process of dissolution,” as now claimed, is conclusively negatived by its certificate of dissolution, filed with the Secretary of State of Illinois long after the transaction here involved. This certificate is required by section 75 of chapter 32, at page 678, of the Revised Statutes of Illinois, of all corporations seeking voluntary dissolution, as a condition precedent, to show their prior compliance with all of the laws pertaining to payment of the corporation debts, and the distribution of its capital. Among other things the corporation is required to show by listing, in specific detail, what assets, either in kind or money, were distributed to the stockholders. The form required to be filed provides blank spaces for setting forth the names and addresses of each stockholder receiving any part of the corporation’s property, and the value, in money, of the same. The obvious purpose of this statute is to furnish information to the State, and the unpaid creditors of the corporation, which will enable them, in proper cases, to follow the assets into the hands of the distributees. The certificate filed by the corporation in this case gave no names of any distributees of its property, but, on the contrary, stated that the corporation owned no assets on the date of the adoption of the resolution to dissolve. Nothing in the record even remotely suggests that at the date of the proposed distribution it was regarded or taken as a step in the reduction of capital in conformity with chapter 32, paragraph 59, at page 676, of Cahill’s Illinois Revised Statutes. In these circumstances it would seem that the alleged distribution in kind was not legally effected and that the sale under the contract was a mere conversion of a mixed body of assets *628 into cash without in any way affecting the resources of the corporation or the rights of its minor stockholders and creditors.
If the alleged distribution was a step in the transfer of the assets of the corporation to the corpus of the Duggan Trust, it failed of its purpose, since the procedure adopted was in violation of the express terms of the following provision of the trust instrument:
The Trustees shall have power at any time to sell all or any oí the property, real or personal, then belonging to the trust hereby created, either at public auction or by private contract, for cash or on credit, or partly for cash and partly on credit, and to receive the property and assets at any time belonging to said Johnston City & Big Muddy Coal & Mining Company, or any part of the same, in the event of the dissolution of said company or of the distribution of any part or all of the property and assets of said company in exchange for some part or all of the stock of said company so held by said Trustees, and to execute and deliver all good and sufficient deeds, bills of sale, instruments of transfer, and any and all other writings necessary or proper to convey the property sold by said Trustees, and the proceeds of the- sale so made or of any property so received shall be held by said Trustees upon and subject to the same trusts which the property so sold or conveved was held by said Trustees.
Obviously this language provides for three ways in which additional property may be received into the corpus of the trust, which originally included only the stock of the corporation. It might receive and use the income incident to its stock ownership; it might receive a part of the capital of the corporation distributed in partial liquidation and in return therefor surrender for cancellation a ratable proportion of the stock held by it, or, in the event of dissolution, it might receive all the property of the corporation. The purposes of these provisions of the trust iñstrument are not clear, but it is reasonable to assume that no dissolution was then contemplated and that in certain conditions the corporation was to continue in business as a retail coal dealer with reduced capital, as is indicated by some provisions of the sales contract. It is plain enough, however, that under the terms of the instrument the trustees were required to surrender stock whenever they received assets of the corporation in partial liquidation. Even if the alleged distribution by the corporation to the stockholders was a legal act as contemplated by the corporation laws of Illinois, which in the circumstances here is more than doubtful, it is evident that the trustees, as such — that is, the Duggan Trust, could not legally receive such property into the corpus of the trust unless they complied with the conditions set forth in the trust instrument. No stock was surrendered. Neither was there any prior dissolution, and we conclude, therefore, that the assets in question did not pass, as claimed, into the ownership of the Duggan Trust on March 31, 1920.
The sales contract specifically declares that at the date thereof the stock of the corporation was the property of the Duggan Trust and that the assets to be conveyed were the property of the corpo *629 ration. Even if the trust was a party to the agreement to sell, the terms of that instrument indicate that it was no more than an executory contract to convey certain property or cause such property to be conveyed. Its completion could be effected either by the acquisition of the property and subsequent conveyance to the purchaser, or by causing the conveyance to be made by the corporation. Since we have decided above that the Duggan Trust did not receive the property it follows, of course, that it was not able directly to convey to the purchaser. If it caused the property to be conveyed by the corporation, the. Commissioner’s contention that the sale was made by the corporation is established.
Inasmuch as the sales agreement was executed and the property transferred with title satisfactory to the purchaser, we are of the opinion that it must be regarded as nothing less than a contract for and on behalf of the corporation, entered into for the purposes of binding these stockholders to see that the verbal agreement, theretofore made by the corporation, to sell these properties, would be carried out. The logic of the events, following the conclusion of these negotiations, as well as the things undertaken to be performed in this contract, justify such conclusion, since these directors could not have legally bound the corporation in a contract for the sale of all of its capital assets without special authority from the stockholders. The stockholders, however, could be personally bound by such a contract which, when joined in by all of them, would afford the purchaser the extreme limit of protection to be legally had in the conditions. Under such circumstances a contract by all of the stockholders, they possessing among themselves the power to force its adoption by the corporation, becomes for all intents and purposes the contract of the corporation. Jones v. Missouri-Edison Electric Co., 144 Fed. 765; Kelly v. Fahrney, 145 Ill. App. 80; affd., 242 Ill. 240; 89 N. E. 984; Higgins v. Lansingh, 154 Ill. 301; 40 N. E. 362; Farwell v. Pylo-National Electric Headlight Co., 289 Ill. 157; 124 N. E. 449; Synnott v. Cummings, 116 Fed. 40; Gilman C. & S. R. R. Co. v. Kelley, 77 Ill. 426; Ogden v. Murray, 39 N. Y. 202; Bliss v. Matterson, 45 N. Y. 22. That the sale should be considered a corporation transaction is shown by the fact that the final closing of the deal was made by the officers of the corporation with the purchasers, in the absence of the trustees, and without their knowledge, advice, or assistance, in so far as the record shows; that it was James Duggan, president of the corporation, who executed the conveyance to the purchaser and received from it the full purchase price of $1,800,000. In so doing we think Duggan acted for and in behalf of the corporation, and that his acts, under these circumstances, constituted a complete sale and delivery of this *630 property by the corporation to the purchaser, and the receipt by said corporation of the selling price.
The circumstances herein are practically on all fours with the facts in Taylor Oil & Gas Go., 15 B. T. A. 609, which we decided adversely to the contentions of the petitioners. Since the avowed purpose of the various transactions here other than the actual sale was to avoid tax liability, it becomes the duty of the Board to look through the form to the substance thereof. It has been held that one may lawfully dispose of his property to escape taxation, but that the law will not uphold any mere manipulation, under the guise of disposition, the only effect of which is to defeat the tax. Ransom v. City of Burlington, 111 Ia. 77; 82 N. W. 427; Mitchell v. Board of Commissioners of Leavenworth County, Kansas, 91 U. S. 206; Shotwell v. Moore, 129 U. S. 590. In the various manipulations of record in this proceeding none effected any change in the beneficial ownership of the assets involved. There was no disposition of property either in form or substance that in any way lessened or changed the proportional beneficial interests of the several stockholders of the corporation who surrendered their certificates to the trust on December 31, 1919. At the end of all the complicated procedure indulged in, each of the stockholders of the corporation, except for certain assignments among themselves which are not material here, was in full enjoyment of all the interest therein which he had owned before counsel devised the plan or plot for the avoidance of taxes. We are of the opinion that the sale here involved was made by the Johnston City & Big Muddy Coal & Mining Co. and the taxable income realized therefrom is taxable to it.
Petitioners next challenge the legality of the assessments made against them under and by virtue of the provisions of section 280 of the Revenue Act of 1926, and the jurisdiction of this Board to redetermine the same, for the reason, as claimed by them, that said section is unconstitutional and void. The issues of law raised by these petitioners in respect to the validity of this section of the Act were considered by us in Henry Cappellini et al., 14 B. T. A. 1269, and there decided adversely to the contentions made by them here. By authority of this decision we now overrule the motion so made by them at this time.
Petitioners’ third objection raises the question as to their exemption from liability based upon the theory that they were not in possession of the corporation’s assets at the time the assessment against it was made; but that the Duggan trustees, if anybody, were at said time liable, they being, as claimed by petitioners, the primary transferees and in possession of ample property out of which to pay the tax.
*631 The record, however, fails to establish the facts as contended for by the petitioners in respect to the receipt by the so-called Duggan Trust of the assets of the corporation. The property under consideration here, either in its present or preconverted form, has at all times been in the actual or constructive possession of the corporation or these petitioners, without intervening transferees. The money received for the sale of the property was received by James Duggan, as president of the corporation, before its dissolution, and invested in securities, records of which were kept by the corporation. After dissolution of the corporation, these records were continued by Henry Duggan, a director of the corporation. There is no evidence to show when, how, or by what authority all the assets listed therein, less certain distributions, appear on the property account of James Duggan at the date of the death of the last of the trustees. On March 10, following, James Duggan made distribution to Huida Duggan and Henry Duggan of the portion of such, assets not retained by himself, in accordance with a contract of settlement entered into between himself and said distributees on said date, in which contract, as shown by the receipts taken from dis-tributees, • he assumes to act “ individually and as Trustee.” We are without information as to the nature of the trust under which James Duggan claimed to hold this property, unless it be by virtue of law which casts a trust upon all officers and directors of a dissolved corporation to hold its property and assets for the benefit of its creditors and stockholders, the latter being tenants in common of the same and entitled to legal distribution after debts are paid. Pewabic Mining Co. v. Mason, 145 U. S. 349. Under these circumstances James Duggan could make distribution of the corporation assets, but the distributee stockholders would be liable for the unpaid taxes to the extent of the value of the property received by each; and, since it is the property of the dissolved corporation which must stand for the payment of these obligations, and not the stockholders individually, it is immaterial as to what means were employed in effecting distribution, so long as the property reached them and is found in their possession. Upton, Assignee, v. Tribilcock, 91 U. S. 45; Updike v. United States, 8 Fed. (2d) 913. The record shows that at the final distribution of these assets on March 14, 1928, James Duggan retained as his portion thereof money and securities of a total value. of $1,415,617.35; but there is a total absence of evidence to show that Michael Duggan, or his estate, in any manner shared in said distribution, or received any of such assets. We, therefore, hold that, as to the petitioner James Duggan, liability as transferee of the assets of the defaulting dissolved corporation for the unpaid taxes, limited to the value of the assets thus *632 received, is established; but that, as to the petitioner Michael Dug-gan, his assignment of error in respect to such liability must be sustained.
We next come to the important question of fraud raised by the respondent in his amended answer and for which he prays the imposition of the 50 per cent penalty against the dissolved corporation. Careful consideration of the record upon which the respondent relies to support his imposition of the fraud penalty convinces us that the return here in question, though false, was not wilfully made for the purpose of evading taxes. The charge of fraud is dismissed.
In conformity with the foregoing findings of fact and opinion, we conclude that the petitioner, James Duggan, Docket No. 17208, is liable for the unpaid taxes of the Johnson City & Big Muddy Coal & Mining Co. for the year 1920, not exceeding the amount, in value, of the assets of said corporation received by him, as found. Grand Rapids National Bank, 15 B. T. A. 1166.
Reviewed by the Board.

Decision will be entered under Rule BO in Docket No. 17208. Decision will be entered for the petitioner in Docket No. 17209.